**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAHMOUD KHALIL,

Plaintiff,

-v-

THE HERITAGE FOUNDATION, *et al.*,

Defendants.

No. 1:26-cv-05929-DLC

# MEMORANDUM OF LAW IN SUPPORT OF OFFICIAL-CAPACITY DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Deputy Director
Office of Immigration Litigation

ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7040
alanna.duong@usdoj.gov

*Counsel for Official-Capacity Defendants*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT....1

FACTUAL BACKGROUND....3

STANDARD OF REVIEW....6

ARGUMENT....7

I. This Court lacks subject-matter jurisdiction under the INA. ....7

II. The Court further lacks subject-matter jurisdiction because the United States has not waived its sovereign immunity....12

III. Plaintiff's challenge to the Secretary's determination is nonreviewable....13

IV. Plaintiff has failed to state a claim upon which relief can be granted....15

A. The doctrine of collateral estoppel precludes Plaintiff's claims....15

B. Counts I and II: Claims under 42 U.S.C. §§1985(3) and 1986....16

1. Plaintiff fails to plead a class or any invidious discriminatory animus. ....17

2. Plaintiff fails to plead a constitutional violation. ....19

C. Count III: Claim under Article I, Section 9, Clause 3 of the U.S. Constitution....24

CONCLUSION.... 26

CERTIFICATE OF COMPLIANCE

Defendants Stephen Miller, in his official capacity as White House Deputy Chief of Staff for Policy and Homeland Security Advisor; Marco Rubio, in his official capacity as Secretary of State; Markwayne Mullin, in his official capacity as Secretary of Homeland Security; and Todd Blanche, in his official capacity as Attorney General (collectively, "the Government" or "Official-capacity Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Mahmoud Khalil's complaint, ECF 1 ("Compl."), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

## PRELIMINARY STATEMENT

The Government's efforts to detain and remove Plaintiff from the United States followed from his participation in the violent and anti-Semitic riots and protests that occurred at Columbia University during the spring and summer of 2024. During those protests, Jewish students were the victims of repeated acts of violence and blocked from accessing classroom and other campus facilities by pro-Hamas protestors. Plaintiff was no mere bystander; he was the lead negotiator between the campus invaders and the University administration. He was thus the conduit by which those waging anti-Semitic violence were attempting to extract concessions from Columbia. Considering Plaintiff's leadership role in orchestrating these violent and anti-Semitic protests, the Secretary of State determined that Plaintiff's continued presence in the United States "would compromise a compelling United States foreign policy interest." 8 U.S.C. §1182(a)(3)(C)(iii). Plaintiff was thus detained and removal proceedings were commenced against him.

Regardless of how he styles his claims, Plaintiff has filed this complaint to compel the Court to declare that the Government's removal proceedings against him are unlawful. He complains that the Government "sought to leverage state power to deprive [him] and others of their constitutionally-protected rights to freedom of speech, freedom from punitive detention, equal protection, and travel, on account of their national origin and/or their support of Palestinians" (Compl. ¶483) and brings

this action under 42 U.S.C. §§1985(3) and 1986, and Article I, Section 9, Clause 3 of the U.S. Constitution's prohibition against bills of attainder to stop this alleged conspiracy.

But this Court lacks subject-matter jurisdiction under multiple provisions of the Immigration and Nationality Act ("INA"). First, §1252(a)(5) and (b)(9) channels Plaintiff's claims to the appropriate court of appeals (that is *currently* reviewing Plaintiff's final removal order). Second, §1252(g) and the Supreme Court's decision in *Reno v. America-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471 (1999), separately bars this challenge to the Government's discretionary decision to initiate removal proceedings. Third, the Court also lacks jurisdiction because the United States has not waived its sovereign immunity, and the Secretary's determination that Plaintiff's continued presence would have serious adverse foreign-policy consequences is nonreviewable. In short, Congress clearly did not want aliens who are guests in our country to bring the sort of claims relating to whether they are subject to removal under the immigration laws using tort law or the civil rights statutes.

The complaint also fails on the merits. Plaintiff wholly fails to define a class, and any proposed class defined in terms of the conduct of its members that Defendants allegedly are against is impermissibly defined; any proposed class should not be recognized regardless, because it is based on political affiliation; and Plaintiff has not otherwise plead that the alleged conspirators were motivated by some racial or otherwise class-based, invidious discriminatory animus. Plaintiff also fails to plead any constitutional violation, either under the First Amendment, equal-protection clause, or rights to travel or to be free from punitive detention. And without a constitutional violation, his §§1985 and 1986 claims must fail. Finally, Plaintiff's bill-of-attainder claim fails, as such claims require *legislative* punishment of the named individuals without trial, but Plaintiff's claims arise from *executive* enforcement actions and *adjudicativ*e immigration proceedings. The Court should thus dismiss the complaint against the Government and deny leave to amend.

## FACTUAL BACKGROUND

A. Plaintiff is a native of Syria who came to the United States as a student to study at Columbia University. Compl. ¶¶27-28. "He eventually became active in Columbia's student advocacy and protest movement after October 7, 2023," *id.* ¶29, and was the lead negotiator-mediator between students and the Columbia administration, *id.* ¶¶15, 30, 244. Based on Plaintiff's disruptive activities during spring and summer 2024, Secretary of State Marco Rubio determined that he was removable from the United States because his continued activities and presence presented "potentially adverse foreign policy consequences." *Id.* ¶¶15, 261; *see* 8 U.S.C. §§1227(a)(4)(C)(i), 1182(a)(3)(C)(iii) ("foreign-policy charge"). The Secretary's determination was based on concerns by the Department of Homeland Security ("DHS") that Plaintiff's activities, including "participat[ing] in antisemitic protest and disruptive activities" at Columbia, Compl. ¶262, "may undermine U.S. foreign policy by creating a hostile environment for Jewish students and indicating support for a designated terrorist organization," *id.* ¶258.

In March 2025, the Government arrested Plaintiff and served him with a Notice to Appear, charging him as removable under the foreign-policy charge, and thereafter commenced removal proceedings in Immigration Court. Comp. ¶¶263, 431. The Government added a second charge of removability based on willful misrepresentations of material facts in Plaintiff's adjustment-of-status application. *Id.* ¶¶419, 421. An Immigration Judge ("IJ") found Plaintiff removable as charged, denied his applications for relief and related protection on multiple grounds, and entered a removal order. *Id.* ¶¶288, 432, 434-35, 439. Plaintiff appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and filed a motion to remand proceedings; the BIA dismissed the appeal and denied the motion. *Id.* ¶449; *see Matter of M-K-*, 29 I&N Dec. 556 (BIA 2026). Plaintiff is subject to a final order of removal—which terminated his status as a conditional lawful permanent resident—and has

petitioned for review of that order with the Fifth Circuit. Compl. ¶¶456-57; *see* 8 C.F.R. §1.2 (defining "lawfully admitted for permanent resident").

B. Meanwhile, also in March 2025, Plaintiff filed a habeas petition with the Southern District of New York, challenging his detention and removal based on a broad array of alleged government misconduct under the First and Fifth Amendments, as well as the Administrative Procedure Act ("APA") and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Compl. ¶¶32, 266, 294; *see Khalil v. President, United States*, 164 F.4th 259, 266, 273, 276 (3d Cir. 2026). After the petition was transferred to the District of New Jersey, the district court preliminarily enjoyed the Government from "seeking to remove" Plaintiff based on the foreign-policy charge and ordered his release. Comp. ¶¶32, 428, 436. In so ordering, the district court rejected the Government's arguments that it lacked jurisdiction under the INA to hear Plaintiff's claims. *Khalil*, 164 F.4th at 267. On appeal to the Third Circuit, the Court reversed the district court's conclusion that it had jurisdiction over Plaintiff's habeas petition. *Id.* at 273, 281. The Third Circuit concluded that the INA, specifically 8 U.S.C. §1252(b)(9), stripped the district court of jurisdiction over Plaintiff's claims, requiring him to raise them in a petition for review ("PFR") of a final removal order. *Id.* at 273. The Third Circuit reasoned that addressing any of the claims—including Plaintiff's argument that the Government targeted him under a policy of punishing aliens' pro-Palestinian speech—"would require deciding whether removing Khalil would be unlawful—the very issue decided through the PFR process." *Id.* at 276. Though Plaintiff also challenged his detention, "his arguments against it are identical to his arguments against removal." *Id.* On October 19, 2026, Plaintiff petitioned for certiorari with the Supreme Court, Dkt. 26A90. The Third Circuit has stayed issuance of its mandate pending disposition of the certiorari petition. *See* Dkt. 25-2162 (3d Cir.), ECF 171 (Sept. 22, 2026).

C. After the Third Circuit rendered its decision and while Plaintiff is challenging his removal order in the Fifth Circuit, Plaintiff filed the instant complaint. Plaintiff alleges that in January

2025—in advance of the Government's commencement of his removal proceedings—Mr. Miller and Secretary Rubio met with Betar to discuss "individuals that Defendant Betar pre-selected for deportation." Compl. ¶¶47, 48, 171. He claims that Betar and Canary Mission "began surveilling and pre-selecting Palestinians and their supporters as targets of the conspiracy" in November 2024 and "then communicated directly with the Federal Defendants." *Id.* ¶154. Plaintiff further alleges that Mr. Miller met with the Heritage Foundation and "contributed" to the development of the conspiracy, the "Blueprint." *Id.* ¶114. He claims that even if the targets were unclear, Mr. Miller "had the vision for and understood the strategic design and purpose of the overall plan" and that the Blueprint "mirrored what Defendant Miller had assured, as early as November 2023, he would agree to do if given the opportunity to re-enter the White House." *Id.* ¶¶115-18.

Plaintiff claims that the Government relied on the Canary Mission's pre-selection of students for arrest, detention, and deportation. *Id.* ¶199. He cites two Executive Orders President Trump signed to combat antisemitism as evidence of the Government's alleged role in the conspiracy. *Id.* ¶¶203-06. As it relates to Attorney General Blanche's alleged role, Plaintiff contends that in February or March 2025, "under Defendant Blanche's leadership, the office of the Deputy Attorney General had instructed DOJ prosecutors to obtain a list of student members of Columbia University Apartheid Divest." *Id.* ¶233. Plaintiff further alleges that once they took office, Attorney General Blanche and Secretary Mullin "entered into and ratified this conspiracy, which they knew was underway, and exercised their supervision and control over DHS and the immigration court systems, respectively, to manipulate and attempt to expedite Mr. Khalil's expulsion from the United States, all in furtherance of the conspirators' original aims." *Id.* ¶482.

Plaintiff brought a claim for conspiracy to interfere with his constitutional rights under 42 U.S.C. §1985(3) (Count I), seeking damages from private defendants and federal defendants in their individual capacities and declaratory and injunctive relief against federal defendants in their official

capacities, because all Defendants deprived him of "constitutionally-protected rights to freedom of speech, freedom from punitive detention, equal protection of the law, and interstate travel." Compl. ¶¶479-86. Plaintiff alleges that Defendants "were motivated by discriminatory animus towards Palestinians and their supporters," *id.* ¶480, and that, in furtherance of the alleged conspiracy, Defendants "planned, agreed, and coordinated to identify for retribution—via arrest, detention, and deportation—Palestinians who they sought to silence toward a broader goal of squelching the growing movement for Palestinian human rights," *id.* ¶481. He claims that he will continue to suffer harm "absent a declaration and an injunction prohibiting the Federal Defendants from continuing to undertake acts in furtherance of this conspiracy, including their efforts to rely upon the Rubio Determination and pretextual misrepresentation charges to detain and deport" him. *Id.* ¶486.

Plaintiff also brought a claim for neglecting to prevent the conspiracy under 42 U.S.C. §1986 against all Defendants (Count II), alleging that Defendants' failure to cease the conspiracy or its harmful overt acts injured him. *Id.* ¶¶487-90. Finally, Plaintiff brought a claim under Article I, Section 9, Bill-of-Attainder Clause, of the U.S. Constitution against the Government for its alleged "retributive and vindictive punishment for his Palestinian identity and his constitutionally-protected advocacy in support of Palestinian rights" (Count III). *Id.* ¶¶491-495. As relief, Plaintiff requested, inter alia, declaratory judgment that Defendants' conduct was and continues to be a violation of §§1985 and 1986 and that the Government's conduct reflects a retributive and unconstitutional bill of attainder, as well as "an injunction prohibiting continued reliance on unconstitutional and pretextual grounds for detention and removal." Compl. at 128 (Prayer for Relief).

## STANDARD OF REVIEW

Motions brought under Federal Rule of Civil Procedure 12(b)(1) challenge whether the district court has jurisdiction over the action. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party asserting jurisdiction bears the

burden of proving by a preponderance of the evidence that jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If the parties present factual evidence that is "relevant to the jurisdictional question," the Court *may* consider such evidence. *Robinson v. Malaysia,* 269 F.3d 133, 140 (2d Cir. 2001). But the Court *must* consider facts outside the pleadings "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Id.* at 141 n.6.

A complaint may also be dismissed for failure to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court will ordinarily accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff. *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I. This Court lacks subject-matter jurisdiction under the INA.

The Court must dismiss Plaintiff's complaint in its entirety because the INA, specifically 8 U.S.C. §§1252(a)(5), (b)(9), and (g), strips it of jurisdiction. "[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Arar v. Ashcroft*, 585 F.3d 559, 570 (2d Cir. 2009) (en banc) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)). "Accordingly, the INA requires an alien to seek relief only through judicial review of a removal order in the appropriate court of appeals; it entirely

forecloses judicial review of decisions of the Attorney General or the Secretary of Homeland Security specified by the INA to be within the discretion of those officers." *Id.* (citing 8 U.S.C. §1252).

1. The INA sets forth a judicial adjudicative process that strips district courts of jurisdiction over claims relating to immigration proceedings other than through a petition for review challenging the removal order. *See* 8 U.S.C. §1252(a)(5). An alien may seek judicial review of the decision by the BIA affirming the IJ's removal order by filing a PFR in the appropriate court of appeals. *See* 8 U.S.C. §1252(a). Congress has repeatedly legislated to ensure federal circuit courts are the exclusive Article III forum for aliens to challenge their administrative proceedings, and there are no other types of federal court challenges available for the removal process. Specifically, in 1996, Congress "comprehensive[ly]" amended the INA through passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *INS v. St. Cyr*, 533 U.S. 289, 292 (2001). Among other reforms, IIRIRA eliminated district court jurisdiction and provided that the courts of appeals oversee the immigration system exclusively through petitions for review. *See* 8 U.S.C. §1252 (codifying IIRIRA's judicial review provisions, including later revisions discussed *infra*). Congress again amended the INA through the REAL ID Act of 2005. *Xiao Ji Chen v. U.S. DOJ*, 471 F.3d 315, 326 (2d Cir. 2006). The REAL ID Act repeatedly inserted language into the relevant provisions of 8 U.S.C. §1252, clarifying that their jurisdiction-stripping effects apply notwithstanding any other provision of law, whether "statutory or nonstatutory." *See* REAL ID Act, Pub. L. No. 109-13, §106, 119 Stat. 231 (2005) (quoted language codified at 8 U.S.C. §§1252(a)(2)(A), (B), (C), (a)(4), (a)(5), (b)(9)). Thus, Congress has repeatedly legislated to design, implement, and refine a three-tier administrative and judicial system—namely, the Immigration Court, the BIA, and the Court of Appeals—to determine if and when an alien is removable from the United States. And Congress expressly excluded the district courts from that process and eliminated all other causes of action to the extent they challenge the process of removing an alien from the United States.

2. Section 1252(b)(9) provides, "Judicial review of *all* questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action or proceeding brought to remove an alien … shall be available only in judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9) (emphasis added). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from immigration proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. By law, "the sole and exclusive means for judicial review of an order of removal" is a PFR "filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §1252(a)(5), (b)(9); *see Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000).

"Taken together, §1252(a)(5) and §1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed only through the PFR process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). That includes challenges inextricably intertwined with the final removal order that precede issuance of any order, as well as both direct and indirect challenges to removal orders. *See Mahdawi v. Trump*, 183 F.4th 103, 116-17 (2d Cir. 2026) (rehearing granted Dkt. No. 25-1113, ECF 244); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009); *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012). It also includes decisions to detain for purposes of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion) (recognizing that §1252(b)(9) bar challenges to any "decision to detain [an alien] in the first place or to seek removal," which precedes any issuance of a Notice to Appear). Consequently, district courts are explicitly prohibited from adjudicating such issues. *See* 8 U.S.C. §1252(a)(5), (b)(9); *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008); *accord Monsalvo v. Bondi*, 604 U.S. 712, 720 (2025).

Like the claims Plaintiff raised in his habeas petition that was rejected by the Third Circuit and now before the Fifth Circuit on review of his removal order, Plaintiff is "challenging the government's very basis for trying to remove (and thus detain[]) him"). *Khalil*, 164 F.4th at 274. Here, like there,

Plaintiff alleges a broad array of government misconduct and that the Government was targeting him under a policy of punishing aliens' "pro-Palestinian speech." Compl. ¶¶479-95. Indeed, he claims that he will continue to suffer harm "absent a declaration and an injunction prohibiting the Federal Defendants from continuing to undertake acts in furtherance of this conspiracy, including *their efforts to rely upon the Rubio Determination and pretextual misrepresentation charges to detain and deport*" him. *Id.* ¶486 (emphasis added). As relief, he requests that this Court enjoin the Government's "reliance on unconstitutional and pretextual grounds for detention and removal." *Id.* at 128. But Congress channeled all legal and factual questions that may arise from the removal of an alien into the statutorily-prescribed removal process, with judicial review of those decisions vested exclusively in the court of appeals. *See AADC*, 525 U.S. at 483. Because the gravamen of Plaintiff's claims is to challenge aspects of the process that has led to his removal order, his avenue for relief is through the PFR process. This Court should thus follow the Third Circuit's lead in barring Plaintiff's claims arising from his removal. Under §1252(b)(9), these claims may only be made in removal proceedings, which are properly before the Fifth Circuit.

3. Section 1252(g) separately bars this Court's review. Regardless of how he styles his claims, Plaintiff is challenging the Government's decision to commence removal proceedings against him. Indeed, his allegation of a conspiracy to target him for removal is at the heartland of that provision. By its plain terms, §1252(g) eliminates district court jurisdiction over challenges arising from actions to commence removal proceedings. Section 1252(g) specifically deprives courts of jurisdiction to review "any cause or claim by or on behalf of an alien arising from the decision or action by [the Secretary] to *commence proceedings* … against any alien under this chapter."[1] *Id.* (emphasis added). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any

[1] Certain functions, including in 8 U.S.C. §1252, were transferred to the Secretary of Homeland Security. 6 U.S.C. §557; *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title."

Should there be any doubt, *AADC* definitively bars Plaintiff's claims. In *AADC*, a group of aliens—members of the Popular Front for the Liberation of Palestine—brought a suit challenging the initiation of deportation proceedings. 525 U.S. at 473-75. The aliens claimed they were targeted for their beliefs and expression and even pointed to a specific statement by the "INS regional counsel" indicating as much. *Id.* at 474. They alleged that being deported "because of their affiliation with a politically unpopular group" was unlawful, in violation of the First and Fifth Amendments. *Id.* The Supreme Court held such suit jurisdictionally barred. The Court reasoned that the "decision to 'commence proceedings'" against an alien (or group of aliens) fit exactly within the plain text of §1252(g). *Id.* at 487. The Court thus held that applying §1252(g) to the aliens' claims raised no constitutional doubt because "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *Id.* at 488-92.

That is exactly the situation here: this Court lacks jurisdiction to review Plaintiff's claims because the very basis for his conspiracy theory challenges the Government's decision to commence removal proceedings against him—which §1252(g) squarely prohibits. *See, e.g.*, Compl. ¶¶481 (alleging that Defendants "planned, agreed, and coordinated to identify for retribution–via arrest, detention, and deportation–Palestinians who they sought to silence toward a broader goal of squelching the growing movement for Palestinian human rights"), 486 (alleging that he will continue to suffer harm "absent a declaration and an injunction prohibiting the Federal Defendants from continuing to undertake acts in furtherance of this conspiracy, including their efforts to rely upon the Rubio Determination and pretextual misrepresentation charges to detain and deport" him). Accordingly, this Court should conclude that Plaintiff's claims are barred by §1252(g). *See, e.g.*, *Camarena v. Director, Imm. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021); *Tazu v. Att'y Gen. United States*, 975 F.3d

292, 296 (3d Cir. 2020); *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021); *Silva v. United States*, 866 F.3d 938, 940-41 (8th Cir. 2017); *Kumar v. Holder*, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (claim of initiation of proceedings in a retaliatory manner "falls squarely within section 1252(g) … [and] [t]he pending immigration proceedings are the appropriate forum for addressing petitioner's retaliation claim in the first instance.").

**II. The Court further lacks subject-matter jurisdiction because the United States has not waived its sovereign immunity.**

This Court also lacks subject-matter jurisdiction over Plaintiff's claims against the Government under the doctrine of sovereign immunity, and should dismiss Counts I and II against them for this independent reason. The United States, as a sovereign, is immune from suit unless it waives sovereign immunity and consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016). The waiver "must be unequivocally expressed in the statutory text." *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019) (citation omitted). An action against a federal agency or employee acting in his official capacity is "essentially a suit against the United States"; consequently, such suits are also barred by sovereign immunity unless such immunity is expressly waived. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

Sections 1985(3) and 1986 create causes of action only for the "recovery of damages"—they do not create causes of action for injunctive or other equitable remedies. *See* 42 U.S.C. §§1985(3)-86; *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 833 (1983); *Chow v. Coghlan*, 1990 WL 92702, at *3 (E.D.N.Y. June 28, 1990); *contra* Compl. at 124 (Count I). Moreover, the United States has not waived its sovereign immunity for damages actions under those provisions. *See, e.g.*, *Davis v. U.S. DOJ*, 204 F.3d 723, 726 (7th Cir. 2000) ("Sovereign immunity … bars §§1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity."); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) ("[S]uits against the United States brought under the civil rights statutes [including §§1981, 1983, 1985, 1986, and 1988]

are barred by sovereign immunity[.]"); *Gabriel v. Gen. Servs. Admin.*, 545 F. App'x 829, 831 (9th Cir. 2013) ("Civil Rights statutes, such as 42 U.S.C. §§1981, 1985, do not waive the federal government's own sovereign immunity."); *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F.Supp.2d 456, 466 (S.D.N.Y. 2006) (dismissing §1985 claim on sovereign-immunity grounds); *Thomas-Ateba v. SAMHSA of U.S. Gov't*, 2014 WL 1414577, at *3 (E.D.N.Y. Apr. 10, 2014) (same). Although Plaintiff invokes the APA (Compl. ¶25), the APA is limited to non-damages remedies, and thus, by its terms does not cover actions under §§1985(3) or 1986, which authorizes *only* damages remedies. *See* 5 U.S.C. §702 (providing for "an action seeking relief other than money damages"); *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 143 (2d Cir. 1999) (recognizing the limited nature of the APA's waiver provision).

**III. Plaintiff's challenge to the Secretary's determination is nonreviewable.**

The throughline in Plaintiff's complaint is his challenge to and request that this Court enjoins the Government from relying on the Secretary's foreign-policy determination that led to him being ordered removed (*see* Compl. ¶¶486, 488, 492 & at 128). But any challenge to the Secretary's determination that Plaintiff's "presence or activities in the United States … would have potentially serious adverse foreign policy consequences for the United States" is nonreviewable. 8 U.S.C. §1227(a)(4)(C)(i). So too is any challenge to the determination that his "past, current, or expected beliefs, statements, or associations … would compromise a compelling United States foreign policy interest." 8 U.S.C. §1182(a)(3)(C)(iii)). Necessarily, such challenges sit at the intersection of two issues textually committed to the political branches of the Government: foreign policy and immigration.

Regarding foreign policy, it is well-established that "[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention. *Haig v. Agee*, 453 U.S. 280, 292 (1981); *see also Harisiades*, 342 U.S. at 589 (matters relating "to the conduct of foreign relations … are so exclusively entrusted to the political branches of government as to be largely immune from

judicial inquiry or interference"); *Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57, 60 (2d Cir. 2005) ("Judicial deference to the Executive Branch on questions of foreign policy has long been established."). And regarding immigration, the Supreme Court "has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens" and has "long recognized that the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments [is] largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 791 (1977) (cleaned up); *see also Harisiades*, 342 U.S. at 588-89 ("[A]ny policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."); *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government."); *Pavadan v. United States*, 82 F.3d 23, 27 (2d Cir. 1996) ("[I]t cannot be disputed seriously that there is a 'textually demonstrable constitutional commitment' of naturalization and immigration to Congress."). As the Supreme Court has explained, "[s]ince decision in these matters may implicate our relations with foreign powers, and since a wide variety of classification must be defined in light of the changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary." *Matthews*, 426 U.S. at 81.

Further, no articulable standards for what constitutes "potentially serious adverse foreign policy consequences" exist. 8 U.S.C. §1227(a)(4)(C)(i). The same is true for what constitutes a "compelling foreign policy interest." 8 U.S.C. §1227(a)(4)(C)(ii). Indeed, the Secretary of State has sole discretion in determining whether a compelling foreign-policy interest exists. This Court cannot

second-guess that determination without making its own foreign-policy determination, and if it did, such resolution would express a lack of respect due to a coordinated branch of government. *See Fed. Express Corp. v. U.S. DOC*, 39 F.4th 756, 769-70 (D.C. Cir. 2022) ("[B]y long-standing tradition, courts have been wary of second-guessing executive branch decision[s] involving complicated foreign policy matters.") (citations omitted). In short, under no circumstances can Plaintiff challenge, or this Court second-guess, the determination that Plaintiff's presence in the United States has potentially serious adverse foreign-policy consequences for the United States or that his past, current, or expected beliefs, statements, or associations would indeed compromise a compelling U.S. foreign-policy interest.

## IV. Plaintiff has failed to state a claim upon which relief can be granted.

The Government incorporates Individual-capacity Federal Defendants' arguments that it is unclear if §1985(3) applies to federal officials, the intra-corporate conspiracy doctrine bars the §1985(3) claim, and Plaintiff has otherwise failed to state a claim. The Government also incorporates the arguments by the other co-Defendants regarding Plaintiff's failure to state a claim.

### A. The doctrine of collateral estoppel precludes Plaintiff's claims.

Considering the Third Circuit's decision, the issues presented in Plaintiff's claims are barred by collateral estoppel, which "prevents a [party] from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003). Indeed, collateral estoppel applies because: (1) regardless of how he styles his claims, the issue and underlying facts in the proceedings before the Third Circuit (and now before the Fifth Circuit) are identical—Plaintiff is challenging his removal from the United States; (2) the issue in the prior proceeding was "actually litigated and actually decided"; (3) Plaintiff had "a full and fair opportunity for litigation in the prior proceeding"; and (4) the issues previously litigated were "necessary to support a valid and final judgment on the merits," as the Third Circuit considered and

decided that Plaintiff's claims must be channeled to the Fifth Circuit. *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008); *Khalil*, 164 F.4th at 273-81. Issue preclusion thus applies here.

**B. Counts I and II: Claims under 42 U.S.C. §§1985(3) and 1986**

Plaintiff fails to allege facts that amount to a claim under the statutory provisions he raises. To state a conspiracy claim under §1985(3), a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (citation omitted). He must also allege membership in a protected class and that the alleged conspirators acted with racial or class-based "invidiously discriminatory motivation." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (recognizing that §1985(3) was not intended as a general federal tort law).

The term "class" "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the §1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under §1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993); *W. Hartford v. Operation Rescue,* 991 F.2d 1039, 1046 (2d Cir. 1993). Broad allegations of conspiracy are insufficient; the plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003). Because §1985(3) "provides no substantive rights itself," a deprivation of a constitutional right is a required object of a conspiracy under §1985(3). *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). Liability under §1986 is premised on a successful §1985 claim. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993).

### 1. Plaintiff fails to plead a class or any invidious discriminatory animus.

Plaintiff fails to plead facts that any alleged conspiracy is "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Cine SK8, Inc. v. Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citation omitted). He does not define his class, which means his claim fails on this ground alone. For the sake of completeness, any proposed class appears to be composed of Palestinians "and/or" their supporters whose advocacy criticizes "Israel's subjugation of Palestinians and demanding application of human rights protection to Palestinians" (Compl. ¶¶479-81).

First, the proposed class does not possess "the type of inherited or immutable characteristics sufficient to satisfy the class-based animus requirement," *Dolan*, 794 F.3d at 296 (rejecting "classes of jailhouse lawyers and members of an ILC"), such that the group "has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct." *Farber v. Paterson*, 440 F.3d 131, 136 (3d Cir. 2006). Instead, the proposed class is precisely the kind of circularly-defined class the Supreme Court cautioned against in *Bray*—a class composed of individuals defined by the action at issue, and here, those allegedly targeted because of their advocacy that criticizes "Israel's subjugation of Palestinians and demanding application of human rights protection to Palestinians" (Compl. ¶480)—that Defendants allegedly disfavor. *See Bray*, 506 U.S. at 269 ("[T]he class cannot be defined simply as the group of victims of the tortious action.") (cleaned up); *Gleason*, 869 F.2d at 695 (rejecting "a political opponent of the defendants and was extremely vocal in his opposition to their management of the [municipality]"); *Berenson v. Gottlieb*, 2026 WL 3135334, at *4 (2d Cir. Oct. 20, 2026) (rejecting "Americans who had chosen not to receive a COVID-19 vaccine, a class of which [] Berenson is apart").

Second, apart from being impermissibly defined, the proposed class is a political affiliation and should not be recognized for §1985(3) purposes. The Second Circuit has recognized that a group of people with the same political affiliation may constitute a "class" in *Keating v. Carey*, 706 F.2d 377,

387-88 (2d Cir. 1983). But after *Keating*, the Supreme Court "suggested that the scope of section 1985 might not extend to include discrimination against political groups except where that discrimination was based on racial animus." *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989) (citing *Scott*, 463 U.S. at 836-37). Multiple circuits courts have upheld that limitation. *See Perez-Sanchez v. Public Building Authority*, 531 F.3d 104, 109 (1st Cir. 2008) ("§1985(3) provides no remedy for animus on the basis of political beliefs.") (collecting cases); *accord Platsky v. Kilpatrick*, 806 F. Supp. 358, 363 (E.D.N.Y. 1992) ("Even if this court were to find that plaintiff is a member of a protected class, it is not clear that *Keating* remains good law in light of [*Scott*]"); *Burke v. E. Hampton*, 2001 WL 624821, at *13 (E.D.N.Y. Mar. 16, 2001) ("[T]o the extent they seek to assert a §1985(3) based on Burke's political affiliations, the Court notes that any such future amendment to the pleadings may be futile."). This Court should follow this line of cases and conclude that a political affiliation is not a "class" for purposes of §1985(3), except where that discrimination was based on racial animus. *See Scott*, 463 U.S. at 836-37. Although some members of the proposed class here may consider their ethnicity or nationality to be Palestinian, the proposed class includes people who are not but share political views of supporting Palestinians. Compl. ¶¶2, 479-81. Stated differently, at most, the proposed class is a political affiliation—precisely what *Scott* forecloses.

Third, Plaintiff fails to plead facts showing that Defendants were motivated by a "invidious discriminatory animus." *Cine SK8*, 507 F.3d at 791. He alleges that Defendants acted "on their animus towards [him] and other Palestinian supporters," Compl. ¶481, "as well as Muslims," *id.* ¶481. *See, e.g.*, Compl. ¶¶2-3, 91, 95, 120. But he has not alleged facts showing that Defendants "*acted* with class-based discriminatory animus." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (emphasis added). The arrest of aliens for violent protests and national-security violations is not motivated by animus, but by specific conduct that posed significant adverse national-security consequences. *See* Compl. ¶¶250, 256-58. Indeed, Plaintiff's claims boil down to an assertion of political motivation, nothing

more, and such claims are insufficient to state a conspiracy claim. *See, e.g.*, *Morales v. New York*, 752 F.3d 234, 238 (2d Cir. 2014) (complaint failed to state a claim under §1985 where plaintiff alleged that defendants violated plaintiff's rights "because of their discriminatory intent" and "based on [plaintiff's] race and color"); *Posr v. Court Officer Shield No, 207*, 180 F.3d 409, 419 (2d Cir. 1999) ("The plaintiff identifies himself as black, and he alleges in his complaint that the actions taken against him were racially motivated. The mere assertion of racial motivation, however, is not sufficient to state a conspiracy claim [under §1985]."); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (allegation that defendants "selectively enforc[ed] the College rules ... against plaintiffs ... because they are black [or] Latin" too conclusory under §1981); *Raymond v. New York*, 317 F. Supp. 3d 746, 766 (S.D.N.Y. 2018) ("The assertion that [s]he is Black and they are White is simply insufficient as a factual pleading to allege racially motivated discrimination for purposes of a plausible [S]ection 1981 claim.").

**2. Plaintiff fails to plead a constitutional violation.**

Plaintiff alleges "violations of his rights to free speech, to equal protection, to be free from punitive detention, and to travel freely in the Unitd States" (Compl. ¶479). But Plaintiff fails to allege facts showing any violation. Accordingly, a conspiracy without an underlying constitutional violation cannot state a claim. *See Nasca v. Suffolk*, 2008 WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Plaintiff's conspiracy claim under [§]1985 must also fail because there is no underlying [§]1983 violation.") (collecting cases).

A. As an initial matter, whether §1985(3) gives rise to a cause of action based on the First Amendment is unclear. *See Egan v. Aurora*, 291 F.2d 706 (7th Cir. 1961) (holding that §1985(3) giving right of action to person deprived, by a conspiracy, of equal protection of laws, does not create cause of action based on conspiracy to deprive party of right to freedom of speech and assembly) (citing *Collins v Hardyman*, 341 U.S. 651, 661 (1951) (addressing predecessor statute: "it is clear that this statute does not attempt to reach a conspiracy to deprive one of rights, unless it is a deprivation of equality,

of 'equal protection of the law,' or of 'equal privileges and immunities under the law.'")). Further, an alien's violent protest falls outside the scope of First Amendment protection and thus cannot serve as a basis for a §1985(3) claim. *See Brandenburg v. Ohio*, 395 U.S. 444 (1969) (holding that advocacy shall not be barred under the First Amendment *unless* it is likely to incite or produce lawlessness).

In any event, the First Amendment rights of citizens and aliens are not coextensive. The Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see, e.g.*, *Mathews*, 426 U.S. at 79-80. This is grounded in the principle that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Demore*, 538 U.S. at 522 (cleaned up). Indeed, in the foreign-relations context, the Government can burden even citizens' First Amendment rights. *See Haig*, 453 U.S. at 287 (upholding Executive's authority to revoke passport on national-security and foreign-policy grounds). The Supreme Court has thus recognized that "the alien has been accorded a generous and ascending scale of rights as he increases his identity with our society," that "become more extensive and secure when he makes a preliminary declaration of intention to become a citizen, and expand to those of full citizenship upon naturalization." *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953) (cleaned up).

Consistent with this principle, the Supreme Court has held that the First Amendment does not prohibit Congress or the Executive from deporting aliens based on activities plainly protected by the First Amendment for citizens. *See Harisiades*, 342 U.S. at 591-92 (alien could be deported for membership in the Communist Party). The Court has recognized that "it often is difficult to determine whether ambiguous speech is advocacy of political methods or subtly shades into a methodical but prudent incitement to violence." *Id.* at 592. And the deportation orders at issue were not based on the aliens' personal advocacy for violence, but rather their mere membership in the

Communist Party. *Id.* at 582-84. Nevertheless, the Court concluded that "the First Amendment does not prevent the deportation of these aliens." *Id.* at 592; *see Graham v. Richardson*, 403 U.S. 365, 377 (1971) ("[t]he national government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, [and the] regulation of their conduct").

If subject to review at all, Plaintiff's constitutional claim should be reviewed under the highly deferential "facially-legitimate-and-bona-fide standard"—that is, solely whether the legal justification proffered by the Executive is facially valid, without further inquiry into the justifications behind the actions. *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024); *see Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (finding bona-fide-and-facially-legitimate reasons sufficient to deny a waiver for a nonimmigrant visa even when First Amendment rights were implicated); *Trump v. Hawaii*, 585 U.S. 667, 704-05 (2018) (finding travel proclamation expressly premised on a legitimate purpose based on a national-security interest). Under the facially-legitimate-and-bona-fide standard, the Court looks to the legal justification proffered by the Government and, if facially valid, "the inquiry is at an end." *Muñoz*, 602 U.S. at 908. This is because Congress has plenary authority over immigration matters, which are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Mathews*, 426 U.S. at 81 n.17 (cleaned up); *see Carlson v. Landon*, 342 U.S. 524, 534 (1952) (recognizing that as long as an alien "fail[s] to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them").

The Secretary's determination plainly satisfies the facially-legitimate-and-bona-fide standard. The foreign-policy provision expressly provides that an alien cannot be removable "because of the alien's past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States *unless* the Secretary of State personally determines that the alien's [presence] would compromise a compelling United States foreign policy interest." 8 U.S.C. §1182(a)(3)(C)(iii) (emphasis added). In other words, otherwise "protected speech"

could only be used as the basis for removal in cases the Secretary himself determines have a particularly and sufficiently high foreign-policy justification. Here, the Secretary did just that: he determined that Plaintiff was removable under §1227(a)(4)(C)(i), because Plaintiff's continued presence and activities "would have potentially serious adverse foreign policy consequences and compromise a compelling U.S. foreign policy interest." *See Am. Ass'n of Univ. Professors v. Rubio ("AAUP")*, 802 F. Supp. 3d at 144-45 (D. Mass. 2025); Comp. ¶15. Moreover, Plaintiff has not alleged that the Secretary "deliberately interpret[ed]" the statute against him, nor "singled him out alone for that misinterpretation." *Brady v. Colchester*, 863 F.2d 205, 216 (2d Cir. 1988). Nor could he. *See AAUP*, 802 F. Supp. 3d at 141-45, 151-53 (identifying others charged with removability under §1227(a)(4)(C)).

Should there be any doubt: The applications of the foreign-policy statutes further the Government's legitimate national-security and foreign-policy interests, including countering support for terrorist groups and addressing antisemitism; the decisions regarding admissibility, foreign policy, and national security by their nature serve compelling government interests. *See Harisiades*, 342 U.S. at 588-89 (immigration policies are "intricately interwoven" with foreign affairs and "are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference"). Indeed, this case is easier than *Harisiades* given Plaintiff's organizing in support of groups involved in horrific violence and terrorism and organizing against a close U.S. ally.

B. Plaintiff's bald assertion of a violation of "equal protection" (Compl. ¶¶ 238, 459, 479, 483-84) and mere assertion that a "goal of the conspiracy was to deny these individuals their rights to freedom of speech, travel, equal protection, and freedom from punitive detention" (Compl. ¶238), without more, is insufficient to state a claim. *Iqbal*, 556 U.S. at 678; *Yale Auto Parts v. Johnson*, 758 F.2d 54, 61 (2d Cir. 1985) (allegation that others were treated differently is "essential" to an equal protection claim). The complaint is devoid of an equal-protection theory. Plaintiff has not pointed to a law or policy that "expressly classifies persons on the basis of race." *Brown v. City of Oneonta, New York*,

221 F.3d 329, 337 (2d Cir. 2000) (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213, 227-29 (1995)). Nor did he "identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *Id.* (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886)). He also failed to "allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Id.* (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977); *Johnson v. Wing,* 178 F.3d 611, 615 (2d Cir. 1999)). In the absence of any such factual allegations, Plaintiff's equal-protection claim is insufficient as a matter of law. *See Brady*, 863 F.2d at 216-17.

C. Plaintiff's bare assertions of freedoms to travel and from punitive detention are also insufficient to state a claim. "A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right. The right must be *aimed at*; its impairment must be a conscious objective of the enterprise." *Bray*, 506 U.S. at 275 (cleaned up).

To implicate the right to interstate travel, a §1985(3) conspiracy must have as its "'predominant purpose ... to impede or prevent the exercise of the right of interstate travel, or to oppress a person because of [his] exercise of that right.'" *Bray*, 506 U.S. at 275 (quoting *United States v. Guest*, 383 U.S. 745, 760 (1966)). Moreover, the Supreme Court has recognized that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. And civil detention pending removal proceedings "can never be punitive, either by design or effect." *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 232 (D. Vt. 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Fong Yue Ting v. United States*, 149 U.S. 698, 730, 13 (1893), and *Ozturk v. Trump*, 779 F. Supp. 3d 462, 493 (D. Vt. 2025)); *accord Wong Wing v. United States*, 163 U.S. 228 (1896). "The purpose of deportation is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).

Aside from asserting a violation of his right to travel freely in the United States and to be free from punitive detention in the same cursory sentence repeated throughout his complaint (*see* Compl. ¶¶2, 91, 238, 479, 483-84), Plaintiff plead no facts to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. He merely claims that one of "[t]he goal of the conspiracy was to deny these individuals their rights to freedom of speech, travel, equal protection, and freedom from punitive detention." Comp. ¶238. Crucially, Plaintiff does not claim that the predominant purpose of the alleged conspiracy was to prevent his travel or to impose punitive detention. *See Bray*, 506 U.S. at 275. Plaintiff has thus failed to state a claim under the deprivation clause of §1985(3) "because [he has] identified no right protected against private action that has been the object of the alleged conspiracy." *Id.* at 278.

D. Section 1986 "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Thomas*, 165 F.3d at 147 (cleaned up). Thus, a §1986 claim must be predicated upon a valid §1985 claim. *Id.* As Plaintiff's §1985(3) claim fails, his §1986 claim must also fail. The Court should thus dismiss Counts I and II.

**C. Count III: Claim under Article I, Section 9, Clause 3 of the U.S. Constitution**

Plaintiff's bill-of-attainder claim fails. Article I, Section 9, Clause 3 of the Constitution provides, "No bill of attainder or ex post facto Law shall be passed." "A bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *New York State Trawlers Assoc. v. Jorling*, 16 F.3d 1303, 1312 (2d Cir. 1994) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)). "Such bills are condemned in the Constitution largely because they represent a legislative encroachment on powers more properly exercised by the judiciary. A bill of attainder, 'assumes, in the language of the textbooks,

judicial magistry; it pronounces upon the guilt of the party, without any of the forms or safeguards of trial.'" *Linnas v. INS*, 790 F.2d 1024, 1028 (2d Cir. 1986) (citation omitted).

Actions brought under the Bill-of-Attainder Clause must challenge laws or amendments thereto enacted by legislatures. *See, e.g.*, *Jorling,* 16 F.3d at 1306, 1312 (challenge to New York legislature's enactment of amendments to its Environmental Conservation Law to protect against trawling for lobsters); *Linnas*, 790 F.2d at 1024 (challenge to "Holtzman amendment" to federal immigration law generally requiring deportation of persons shown to have participated in Nazi persecution during World War II, and eliminating executive discretion to grant such persons relief, despite threat to deportee's life or liberty that might result from deportation). But here, Plaintiff complains of no conduct that could be characterized as a legislative act; rather, Plaintiff alleges a broad conspiracy to target him "for arrest, detention, and deportation." Compl. ¶479. Thus, the alleged actions relate to Plaintiff's removal and are *executive* enforcement actions and *adjudicative* immigration proceedings—not *legislative* acts alleged to be in violation of the constitutional prohibition against bills of attainder. Although Plaintiff asserts that Defendants have "usurped the judicial role, bypassing any valid judicial adjudication of their punishment," Compl. ¶492, this makes no sense given the ongoing removal proceedings in the Fifth Circuit, and such an allegation does not relieve Plaintiff of his obligation to identify a legislative action. And, crucially, Plaintiff still has judicial recourse through the PFR process. Because Plaintiff has not asserted any legislative action that the Government engaged in, he has not stated a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court should dismiss Count III.

## CONCLUSION

The Court should dismiss the complaint against the Government and deny leave to amend.

Respectfully submitted,

/s/ Alanna T. Duong
ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7040
alanna.duong@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Deputy Director
Office of Immigration Litigation

Dated: November 3, 2026

*Counsel for Official-Capacity Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum of law complies with the word count limitations set forth in Local Civil Rule 7.1(c) and contains 8,742 words, exclusive of the caption, table of content, signature blocks, and the certificates.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

Dated: November 3, 2026

*Counsel for Official-Capacity Defendants*