UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAHMOUD KHALIL,<br><br>Plaintiff,<br><br>-against-<br><br>THE HERITAGE FOUNDATION, et al.,<br><br>Defendants. | No. 1:26-cv-05929 (DLC) (SN) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VICTOR MUSLIN'S MOTION TO DISMISS THE COMPLAINT**

**NATIONAL JEWISH ADVOCACY CENTER**

ALAN H. SCHEINER
Senior Litigation Counsel
3 Times Square, Suite 512
New York, NY 10036
Tel: (332) 278-1100 x 754
alan@njaclaw.org

*Attorneys for Defendant Victor Muslin*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

A. Muslin's Alleged Conduct ..... 2

B. Muslin's Alleged Association with Canary Mission ..... 3

C. The Alleged Conspiracy ..... 3

D. Plaintiff's Arrest ..... 4

STANDARD OF REVIEW ..... 5

ARGUMENT ..... 6

POINT I
THE COMPLAINT PLEADS NO DEPRIVATION OF A CONSTITUTIONAL RIGHT BY ANY DEFENDANT ..... 6

POINT II
THE ALLEGATIONS FAIL TO SUPPORT A PLAUSIBLE INFERENCE THAT MUSLIN JOINED A CONSPIRACY ..... 8

A. No Fact Pleaded Shows an Agreement by Muslin ..... 9

B. No Fact Pleaded Shows that Muslin Knew of a Purpose to Deprive Plaintiff of a Constitutional Right ..... 13

C. Muslin Was Not Engaged in Joint Action with the Government ..... 16

POINT III
NO FACT PLEADED SHOWS THAT MUSLIN JOINED A CONSPIRACY INVOLVING THE GOVERNMENT OR AIMED AT INTERFERING WITH INTERSTATE TRAVEL ..... 18

A. No Fact Pleaded Shows that Muslin Joined a Conspiracy Involving, or Aimed at Influencing, the Government ..... 18

B. No Fact Pleaded Shows that Muslin's Conduct Was Aimed at Interfering with Interstate Travel ..... 20

POINT IV
NOTHING PLEADED SHOWS THAT MUSLIN ACTED WITH THE REQUIRED CLASS-BASED ANIMUS ..... 20

POINT V
COUNT II FAILS WITH COUNT I, IS TIME-BARRED, AND PLEADS NO FACT SHOWING KNOWLEDGE OR POWER TO PREVENT A CONSTITUTIONAL VIOLATION ..... 22

A. Count II Depends on Count I ..... 22

B. Count II Is Time-Barred ..... 23

C. No Fact Pleaded Shows Knowledge of an Impending Wrong or Power to Prevent It ..... 25

POINT VI
THE IMMIGRATION AND NATIONALITY ACT BARS PLAINTIFF'S CLAIMS ..... 25

CONCLUSION ..... 28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ........ 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ *passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ *passim*

*Bell v. Wolfish*, 441 U.S. 520 (1979) ........ 7

*Benavidez v. Gunnell*, 722 F.2d 615 (10th Cir. 1983) ........ 16

*Berenson v. Gottlieb*, No. 25-2709-cv, 2026 WL 3135334 (2d Cir. Oct. 20, 2026) ........ 22

*Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014) ........ 13

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ........ 8, 13, 15, 19, 20, 21

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) ........ 10, 16

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ........ 5, 14

*Connick v. Myers*, 461 U.S. 138 (1983) ........ 15

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ........ 28

*Deters v. City of Poughkeepsie*, 150 F. App'x 10 (2d Cir. 2005) ........ 24

*Dolan v. Connolly*, 794 F.3d 290 (2d Cir. 2015) ........ 22

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ........ 12, 13

*Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) ........ 17

*Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.*, 288 F. Supp. 2d 273 (E.D.N.Y. 2003), *aff'd sub nom. Friends of Falun Gong v. Pac. Culture*, 109 F. App'x 442 (2d Cir. 2004) ........ 18, 19, 20

*Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268 (2d Cir. 1999) ........ 16

*Gleason v. McBride*, 869 F.2d 688 (2d Cir. 1989) ........ 22

*Golding v. DHS/ICE*, No. 20-CV-8679 (VSB), 2024 WL 3012620 (S.D.N.Y. June 13, 2024) ........ 26

*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015) ........ 24

*Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259 (2d Cir. 2014) .............. 7

*Heaning v. NYNEX-N.Y.*, 945 F. Supp. 640 (S.D.N.Y. 1996) .................................................... 17

*Higginbotham v. City of New York*, 105 F. Supp. 3d 369 (S.D.N.Y. 2015) ................................ 15

*Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400 (S.D.N.Y. 2004) ......................................... 17

*Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026)............................................... 26

*Mahoney v. Nat'l Org. for Women*, 681 F. Supp. 129 (D. Conn. 1987)...................................... 22

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085 (2d Cir. 1993).......................... 20

*Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20 (2d Cir. 1985) ..................................................... 24

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .................................................. 12, 15

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ..................................................... 24

*Paige v. Police Dep't of Schenectady*, 264 F.3d 197 (2d Cir. 2001) ........................................... 23

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002)...................................................... 23, 24

*Peavey v. Polytechnic Inst. of N.Y.*, 775 F. Supp. 75 (E.D.N.Y. 1991), *aff'd*, 969 F.2d 1042 (2d Cir. 1992)............................................................................................................... 6, 19

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) ............................................................... 20

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ......................................................... 24

*Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451 (1952)..................................................................... 7

*Rodgers v. Tolson*, 582 F.2d 315 (4th Cir. 1978) ........................................................................ 22

*Romer v. Morgenthau*, 119 F. Supp. 2d 346 (S.D.N.Y. 2000) ............................................. 1, 8, 9

*Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980) ................................................ 23, 24

*Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979)................................................................... 15

*Snyder v. Phelps*, 562 U.S. 443 (2011) ........................................................................................ 15

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ......................................................................... 15

*Stefanoni v. Darien Little League, Inc.*, 101 F. Supp. 3d 160 (D. Conn. 2015) ............................ 6

*Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999)............................................... 9, 11, 13, 20, 21, 22

*Torres-Jurado v. United States*, No. 20-CV-04575 (DG) (CLP), 2024 WL 1092527 (E.D.N.Y. Mar. 12, 2024) ........ 26

*United Bhd. of Carpenters & Joiners, Loc. 610 v. Scott*, 463 U.S. 825 (1983).... 6, 8, 9, 19, 20, 21

*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003) ........ 1, 9, 10, 11, 12, 19

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ........ 7

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ........ 9, 11

**Statutes**

8 U.S.C. § 1227(a)(4)(C)(i) ........ 7

8 U.S.C. § 1252(a)(5) ........ 26

8 U.S.C. § 1252(b)(9) ........ 26

8 U.S.C. § 1252(g) ........ 26

42 U.S.C. § 1985(3) ........ *passim*

42 U.S.C. § 1986 ........ 1, 2, 22, 23, 25

**Rules**

Fed. R. Civ. P. 6(a)(1)(C) ........ 23

Fed. R. Civ. P. 12(b)(1) ........ 1, 27

Fed. R. Civ. P. 12(b)(6) ........ 1, 13

## PRELIMINARY STATEMENT

Defendant Victor Muslin moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims pleaded against him in the Complaint, filed July 14, 2026 (ECF No. 1): Count I, under 42 U.S.C. § 1985(3), and Count II, under 42 U.S.C. § 1986.

The Complaint alleges that the Heritage Foundation, Betar, Canary Mission, and "their respective leaders and agents" (the "Private Defendants") conspired with six federal officials (the "Federal Defendants") to arrest and deport non-citizen Palestinians and their supporters, including Plaintiff Mahmoud Khalil. ¶¶ 3–4. Only eleven of the Complaint's 495 paragraphs mention Muslin. The Complaint alleges no specific communication concerning the alleged unlawful plan between Muslin and any government official, the Heritage Foundation, Betar, or any identified person at Canary Mission, and no fact showing that Muslin knew of a plan to arrest anyone.

To falsely paint Muslin as a conspirator, the Complaint calls him an "operative" and a "conduit," requiring that Muslin's agreement to a conspiracy be illogically inferred from opinions he allegedly held in common with Canary Mission, a private entity. ¶¶ 182, 184, 189. The Complaint's conclusory labels and non sequiturs do not supply the "factual basis supporting a meeting of the minds" required to plead conspiracy. *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).

The claims against Muslin should be dismissed on six grounds. First, for the reasons stated by the Federal Defendants, the Complaint pleads no deprivation of a constitutional right by any party, and Muslin's private conduct alone does not establish the governmental involvement required for three of the four constitutional predicates (Point I). Second, the Complaint pleads no fact showing that Muslin agreed to the alleged plan, knew of it, or knew of

any illegal objective (Point II). Third, no fact pleaded supports a plausible inference that Muslin joined a conspiracy involving the government, aimed at influencing it, or aimed at interstate travel (Point III). Fourth, no fact pleaded shows that Muslin was motivated by animus against a protected class (Point IV). Fifth, Count II is invalid for the same reasons as Count I, is time-barred, and pleads no fact showing that Muslin knew a wrong was "about to be committed" or had the "power to prevent or aid in preventing" it (Point V). *See* 42 U.S.C. § 1986. Sixth, as the Federal Defendants show, the Immigration and Nationality Act bars Plaintiff's claims (Point VI).

## STATEMENT OF FACTS

### A. Muslin's Alleged Conduct

Muslin is a Columbia University alumnus who lives in New York. ¶ 45.[1] Only eleven of the Complaint's 495 paragraphs mention him. ¶¶ 45, 74, 182–190. He attended protests on the Columbia campus and photographed "Palestinian students and supporters of Palestinian rights" there. ¶ 184. He kept "an online archive that contained dossiers on such individuals, singling out non-citizen students." ¶ 184. The only entries identified refer to Plaintiff and Mohsen Mahdawi, which were marked as "foreign student alert" in red font. ¶ 187.

Around or before January 21, 2025, replying to "messages about a particular protest involving support for Palestinians," in an alumni chat group, Muslin wrote: "[i]f there are photos of someone who needs to be identified (even with a partially obscured face) I have access to tech that may be able to help. DM me." ¶¶ 183, 185 (alteration in original). The Complaint does not identify to whom Muslin sent that message. In another message, Muslin described those protesters, and "Palestinian rights advocates on Columbia University campus," as "roaches" that

[1] This Statement of Facts is based on the allegations in Plaintiff's Complaint, and setting forth these facts is not an admission of the facts alleged or a concession that they are relevant or admissible. For brevity, citations to the Complaint are indicated only by the ¶ symbol followed by the cited paragraph.

need to be squashed. ¶¶ 74, 185. On January 21, 2025, Muslin posted a question in the closed alumni group chat asking how anyone could know "whether any given troublemaker is in fact a foreigner or on a visa." ¶ 186.

### B. Muslin's Alleged Association with Canary Mission

In the closed Columbia alumni chat group, on an unspecified date, an unidentified group member said that Muslin was an "honorary bird" in response to the question by an unidentified group member: "Anybody here affiliated with the Canary Mission?" ¶ 183. On January 30, 2025, Canary Mission published a report "authored by or with contributions from" Muslin, in which Plaintiff's profile appears, as does Mahdawi's. ¶ 188. Plaintiff alleges "upon information and belief," without any factual support, that Canary Mission relied on "Defendant Muslin's dossier" to "prioritize" Plaintiff for arrest and deportation by the Federal Defendants, and the Canary Mission Defendants used "the same [facial recognition] technology that Muslin advertised having 'access to.'" ¶¶ 189–190.

### C. The Alleged Conspiracy

The Heritage Foundation's "Project Esther" was the "Blueprint" for a "public-private partnership" in which private groups, among them Betar and Canary Mission, would identify non-citizen Palestinians and their supporters, and the Federal Defendants would arrest and deport them. ¶¶ 3–4, 140 (citation modified). On information and belief, "sometime between late 2024 and March 2025, Defendants Betar and Canary Mission agreed with the Heritage Foundation Defendants and/or the Federal Defendants" to identify such people at Columbia and, "through their agents, pre-selected Mr. Khalil for targeting." ¶ 246. "Once he was selected, some or all of the Betar and Canary Mission Defendants then communicated directly to some or all of the Federal Defendants . . . ." ¶ 246.

The Complaint identifies no specific communication between Muslin and any other defendant concerning the alleged unlawful plan. The Complaint makes the conclusory allegation that Muslin "works with Canary Mission to identify Columbia University students and faculty who support Palestinian rights to become targets of the conspiracy." ¶ 45. It calls Muslin an "operative" who drew on "longstanding work with multiple anti-Palestinian groups identifying and doxxing pro-Palestinian students and faculty," who "set out to identify non-citizen Palestinian students and student supporters of Palestinian rights" who would "be eligible and targeted for removal" by the Federal Defendants. ¶¶ 74, 182, 186. The Complaint concludes, without factual support, that Muslin "served as a conduit of information between Columbia campus and Canary Mission." ¶ 184.

Beyond Muslin's archive and the January 30 report, the Complaint provides no allegations about his purported work with Canary Mission. The Complaint does not identify any allegedly false statement about Plaintiff posted by Muslin.

The Complaint makes the conclusory allegation that "[a]s an operative of Defendant Canary Mission, Muslin shared its animus towards Palestinians and their supporters and its focus on punishing non-citizen students vulnerable to immigration consequences, evidencing his understanding and agreement with the broader conspiratorial plan . . . ." ¶ 189. But every part of this allegation is conclusory, both that Muslin shared a discriminatory animus, and that he agreed with a broader conspiratorial plan.

### D. Plaintiff's Arrest

On March 6, 2025, Homeland Security Investigations issued a report of analysis on Plaintiff that "contained news articles about his role as the lead negotiator for the encampments, the Canary Mission profile of Mr. Khalil, . . . and Defendant Canary Mission's March 6, 2025

'Foreign National Alert' Instagram post." ¶¶ 255–256. The State Department recommendation that followed relied "solely" on that report and the accompanying Homeland Security memo. ¶¶ 257–259. On March 8, 2025, the Secretary of State determined that Plaintiff should be subject to removal, and immigration agents arrested him. ¶¶ 261, 263, 265. A federal court ordered his release on June 20, 2025, after 104 days of detention. ¶ 32.

## STANDARD OF REVIEW

A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may begin by setting aside allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. These include "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 678 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). The Court then assumes the truth of the well-pleaded facts and asks whether they "plausibly give rise to an entitlement to relief." *Id.* at 679.

Knowledge and intent may be alleged generally, but "'generally' is a relative term," and "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686. "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). Those "magic words" carry weight only where the facts are peculiarly within the defendant's possession or the belief rests on factual information that makes the inference plausible. *Id.* at 384–85.

# ARGUMENT

## POINT I

## THE COMPLAINT PLEADS NO DEPRIVATION OF A CONSTITUTIONAL RIGHT BY ANY DEFENDANT

As pleaded, Count I depends on a constitutional violation, because § 1985(3)[2] creates no rights of its own: "The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere . . . ." *United Bhd. of Carpenters &* Joiners, *Loc. 610 v. Scott*, 463 U.S. 825, 833 (1983). Here, the Complaint alleges that Plaintiff was deprived of his constitutional rights "to free speech, equal protection, and travel, as well as freedom from punitive detention." ¶ 91. Where the constitutional right at issue "restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the State was somehow involved in or affected by the conspiracy." *Carpenters*, 463 U.S. at 833. Where the right is "guarded only from state encroachment," § 1985(3) "applies only to public conspiracies." *Peavey v. Polytechnic Inst. of N.Y.*, 775 F. Supp. 75, 78 (E.D.N.Y. 1991), *aff'd*, 969 F.2d 1042 (2d Cir. 1992) (unpublished table decision).

The First Amendment binds only the government. *See Carpenters*, 463 U.S. at 833. The Fourteenth Amendment guards due process and equal protection "only from infringement by state actors." *Peavey*, 775 F. Supp. at 79; *accord Stefanoni v. Darien Little League, Inc.*, 101 F.

---

[2] Section 1985(3) provides in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of *the equal protection of the laws, or of equal privileges and immunities under the* laws; . . . if one or more persons engaged [in the conspiracy] do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages . . . .

42 U.S.C. § 1985(3) (emphasis added).

Supp. 3d 160, 176 (D. Conn. 2015) (holding that a § 1985(3) action "claiming a conspiracy to violate the Equal Protection Clause of the Fourteenth Amendment also requires state action"). Freedom from punitive detention is a due process right. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). The Fifth Amendment's Due Process Clause "restrict[s] only the Federal Government and not private persons." *Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952); *accord Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014). Indeed, Plaintiff alleges that the conspirators "sought to leverage state power to deprive" him of his rights (¶ 483): specifically, the Secretary of State's determination that Plaintiff is removable under 8 U.S.C. § 1227(a)(4)(C)(i), and the arrest, detention, transfer, and removal proceedings that followed. ¶¶ 15, 192, 261, 484, 486.

For the reasons stated by the Federal Defendants in support of their motions to dismiss, incorporated herein by reference, those acts violated no constitutional right. *See* Memorandum of Law in Support of Official-Capacity Defendants' Motion to Dismiss the Complaint, ECF No. 74 ("Mem. Off. Cap. Defs."), Points III, IV.B.2, at 13–15, 19–24; Memorandum of Law in Support of the Individual-Capacity Federal Defendants' Motion to Dismiss, ECF No. 76 ("Mem. Indiv. Cap. Defs."), Point III.D, at 20 & n.11. The Federal Defendants' Memoranda show that the Secretary of State's determination under 8 U.S.C. § 1227(a)(4)(C)(i) is "nonreviewable," Mem. Off. Cap. Defs. Point III, at 13, and in any event satisfies the "facially-legitimate-and-bona-fide standard," *id.* Point IV.B.2, at 21; that the Complaint "is devoid of an equal-protection theory," *id.* at 22; and that its travel and detention theories rest on "bare assertions," *id.* at 23. Therefore, there was no deprivation of rights, and Count I fails against every Defendant, including Muslin.

*See Romer*, 119 F. Supp. 2d at 363 (dismissing § 1983 conspiracy claim and explaining that "[a] violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right").[3]

Nor can Muslin be charged with involvement in a purely private conspiracy to violate Plaintiff's rights. A private conspiracy could be actionable only if it is "aimed at interfering with rights constitutionally protected against private, as well as official, encroachment." *Carpenters*, 463 U.S. at 833. Of the rights alleged, only interstate travel can be violated by a private party, *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993), but as the Federal Defendants establish, Plaintiff fails to allege a violation of that right, since Plaintiff was lawfully arrested and detained. *See* Mem. Off. Cap. Defs. Point IV.B.2, at 23–24; Mem. Indiv. Cap. Defs. Point III.D, at 20 n.11.

Furthermore, "[t]he right must be 'aimed at' [by the conspirators]; its impairment must be a *conscious objective* of the enterprise." *Bray*, 506 U.S. at 275 (emphasis added) (emphasis omitted) (citation omitted) (quoting *Carpenters*, 463 U.S. at 833).[4] Since no right was violated, there was no deprivation for the conspiracy to aim at. Nor are there any facts alleged that could show that Muslin had reason to believe that the Federal Defendants would engage in constitutional violations if they did seek to deport Plaintiff. For that reason as well, Muslin cannot be held liable under Count I.

## POINT II

## THE ALLEGATIONS FAIL TO SUPPORT A PLAUSIBLE INFERENCE THAT MUSLIN JOINED A CONSPIRACY

To state a § 1985(3) claim, a plaintiff must allege:

---

[3] Because Count II depends on a claim under § 1985(3), Count II also must be dismissed. *See infra* Point V.

[4] Of the rights alleged, only interference with interstate travel could be violated by a private party, such as Muslin, acting alone, and Muslin is not alleged to have taken any individual action against Plaintiff.

> (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *accord Carpenters*, 463 U.S. at 828–29. The third and fourth elements do not require an act by each conspirator; the action lies "against any one or more of the conspirators" once any of them acts. 42 U.S.C. § 1985(3). Count I's allegations of overt acts and injury, ¶¶ 484–485, therefore reach Muslin only if he was a member of the conspiracy. The elements Plaintiff must plead as to Muslin himself are agreement and purpose.

### A. No Fact Pleaded Shows an Agreement by Muslin

The first element is an agreement. A plaintiff "must first show that the defendants conspired—that is, reached an agreement—with one another." *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017). That showing requires "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb*, 340 F.3d at 110 (quoting *Romer*, 119 F. Supp. 2d at 363). An allegation that the defendants agreed is a legal conclusion "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. What remains must be "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," and "parallel conduct that could just as well be independent action" suggests none. *Id.* at 557. And an agreement to gather or share information about protesters, standing alone, does not establish an agreement to deprive anyone of a right.

The Complaint pleads no facts showing that Muslin agreed with anyone to have Plaintiff arrested or removed. It relies instead on conclusory labels: "operative," "works with," and "conduit." ¶¶ 45, 74, 182, 184, 189; *see supra* Statement of Facts § C. Paragraph 184 shows how Plaintiff arrives at those labels: from Muslin's photographs and archive, Plaintiff concludes that Muslin "thus" served as a conduit to Canary Mission. ¶ 184. Nothing in that paragraph alleges that Muslin sent anything to Canary Mission or that anyone there received it. These assertions are "labels and conclusions" that the Court must set aside. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Even taken as true, the three allegations offered to connect Muslin to Canary Mission do not plausibly suggest that he agreed to violate Plaintiff's rights. First, Canary Mission published the January 30 report, which was "authored by or with contributions from" Muslin. ¶ 188. The Complaint does not specify whether Muslin authored the report or only contributed to it, nor does it identify any particular contribution. Even assuming he authored it, that allegation does not, standing alone, plausibly show that he agreed to participate in a conspiracy to violate Plaintiff's constitutional rights. Second, on information and belief, Canary Mission "relied on Defendant Muslin's dossier of Mr. Khalil." ¶ 189. Third, on information and belief, "the Canary Mission Defendants" used "the same technology that Muslin advertised having 'access to.'" ¶ 190. These allegations describe Canary Mission's use of information and technology, but supply no facts showing that Muslin provided either for the purpose of securing Plaintiff's unconstitutional arrest or removal. Considered together, the allegations do not plausibly support a meeting of the minds to violate Plaintiff's rights. *See Webb*, 340 F.3d at 110–11; *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (holding that a "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983

claim against the private entity"). The "honorary bird" remark does not supply the missing agreement: the Complaint attributes it to another chat member, not to Muslin or anyone identified as speaking for Canary Mission. ¶ 183. The Complaint pleads no fact showing that anyone engaged, directed, or paid Muslin to further the alleged conspiracy, and alleging that an unidentified non-party thought Muslin was "affiliated" with Canary Mission as an "honorary bird" (¶ 183) does not plausibly support an inference that Muslin *agreed* to anything with Canary Mission. The defendants must have "reached an agreement—with one another." *Abbasi*, 582 U.S. at 154; *see Webb*, 340 F.3d at 110. Paragraph 246 attributes the alleged agreement to "Defendants Betar and Canary Mission," and its statement that they pre-selected Plaintiff "through their agents" does not identify Muslin. ¶ 246.

The group allegations fare no better. Paragraph 4 alleges "free access and regular communications" between the Federal Defendants and the "Private Defendants"; paragraph 154 alleges, on information and belief, that "the Betar and Canary Mission Defendants" "communicated directly with the Federal Defendants"; and paragraph 479 alleges that "[a]ll Private Defendants" "conspired collectively." ¶¶ 4, 154, 479. None identifies any conduct by Muslin or any agreement he joined. Such assertions are "conclusory and vague" and do not "establish the existence of an agreement among the defendants." *Thomas*, 165 F.3d at 147.

Paragraph 189 of the Complaint asks the Court to infer agreement from shared opinion: Muslin "shared [Canary Mission's] animus . . . and its focus on punishing non-citizen students," which the Complaint describes as "evidencing his understanding and agreement with the broader conspiratorial plan." ¶ 189. That conclusion fares no better than the statements in *Twombly* that "speak directly of agreement," which, "on fair reading," were "merely legal conclusions resting on the prior allegations." 550 U.S. at 564. The *Twombly* pleadings "mentioned no specific time,

place, or person involved in the alleged conspiracies." *Id.* at 565 n.10. Paragraph 189 of the Complaint similarly names no time, place, or person with whom Muslin agreed. Sharing an organization's views is not agreeing to its plan. *Cf. id.* at 556–57 (explaining that "[w]ithout more, parallel conduct does not suggest conspiracy"). Nor can liability rest on Muslin's alleged association with Canary Mission. "For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982). The Complaint pleads no fact showing that Muslin held any such intent.

Muslin's two posts in a social media group and his archive do not fill the gap. Neither post is alleged to have been addressed to a Defendant: the visa question was posted in a group chat for "Columbia University alumni and affiliates," and the post offering to help identify people was made in response to "messages about a particular protest." ¶¶ 185–186. Neither post mentions Canary Mission, the government, or anyone's removal. The archive's "foreign student alert" tag was Muslin's own notation, ¶ 187, and the only allegation that anyone else used his entry appears in paragraph 189 and is made on information and belief. Nothing pleaded shows that anyone told Muslin of a plan or that he assented to it. That is the type of pleading the Second Circuit rejected in *Webb*, where the plaintiffs had "not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants." 340 F.3d at 111.

The contrast with *Dwares* is instructive. There, the Second Circuit sustained conspiracy allegations because the complaint "alleged that defendant officers told the 'skinheads' that the officers would permit the 'skinheads' to assault the demonstrators" and "that one of the 'skinheads' informed a *Village Voice* reporter of the verbal license given by the officers."

*Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). No paragraph that names Muslin alleges any communication between him and any official, any assurance given to him, or any time, place, or participant in an agreement to which he was a party. *See id.* at 100 (plaintiff "should make an effort to provide some 'details of time and place and the alleged effect of the conspiracy'" (citation omitted)). A private party is a willful participant in joint activity with the government only "if the two share some common goal to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (affirming dismissal under Rule 12(b)(6)). The Complaint pleads no facts showing that Muslin shared such a goal with any government actor.

Plaintiff may argue, incorrectly, that Muslin engaged in joint action or entered into a tacit agreement sufficient to support liability. The allegations are insufficient even under those theories. A conspiracy may rest on a "tacit understanding to carry out the prohibited conduct . . . ." *Thomas*, 165 F.3d at 146 (quotation omitted). But a tacit understanding still requires agreement between the defendant and someone else. The Complaint pleads no fact from which an understanding between Muslin and any government actor could be inferred. Joint action fails for the same reason: it requires the shared goal that *Betts* describes, and supplying information that leads the government to act does not, by itself, establish a shared goal. *See infra* Point II.C.

### B. No Fact Pleaded Shows that Muslin Knew of a Purpose to Deprive Plaintiff of a Constitutional Right

The second element is a purpose to deprive Plaintiff of a protected right. The conspiracy must be aimed at interfering with the right. *Bray*, 506 U.S. at 275. The statute's "'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Id.* at 276. A defendant who did not know what the alleged conspiracy intended cannot have adopted its purpose.

No fact pleaded shows that Muslin knew of the plan the Complaint describes, let alone that the arrest and deportation of Plaintiff would violate his rights. Every act the Complaint attributes to him by name concerns identifying, photographing, or writing about protesters. ¶¶ 45, 184–188. None concerns an arrest, or the basis for such an arrest. The Complaint attributes communications with the government only to groups, ¶¶ 4, 154, 246, and supports those allegations only with Betar's and Canary Mission's public posts and public reporting about them, ¶¶ 247–249, 251–252, 271. No paragraph that names Muslin identifies him as a party to any of those communications or alleges that anyone told him of them, of Project Esther, of the "public-private partnership," ¶ 140, or of any intention to arrest anyone. Paragraphs 12 and 193 allege that "[t]he Canary Mission Defendants" "boasted of being central to the arrest" and were "likely privy to inside information." ¶¶ 12, 193. Those allegations describe what the group knew and said, not Muslin, and the only example in paragraph 193 is a Canary Mission post two days *after* the arrest. ¶ 193. Knowledge is personal, and the Complaint pleads no fact showing that Muslin knew of the plan.

Paragraphs 186 and 189 assert Muslin's knowledge and purpose only in conclusory terms. *See Iqbal*, 556 U.S. at 686. Paragraph 186 says that Muslin acted "in support of Canary Mission's avowed mission" and "set out to identify" students "who, under the plan, would be eligible and targeted for removal." ¶ 186. But the only act it describes is a question posted to an alumni chat, and that question mentions neither Canary Mission nor any plan. Paragraph 189's inference from shared views fails for the reasons given above.

Nor is the gap filled by the two information-and-belief allegations discussed above. ¶¶ 189–190; *see supra* Point II.A. No pleaded fact makes those inferred conclusions plausible. *See Citizens United*, 882 F.3d at 384–85. The Complaint does not say when Canary Mission saw

Muslin's entry, what information it used, how Muslin would know what Canary Mission was using, or whether the technology used identified Plaintiff. ¶¶ 185, 189–190. And even if both allegations were accepted as true, they would show only what Canary Mission did with Muslin's entry and the technology he mentioned, not that Muslin knew what Canary Mission or the government would do with them, let alone that they would act in a manner that would violate the Constitution. *See Bray*, 506 U.S. at 276.

All that Muslin's alleged acts show is that he opposed the protesters' views, solicited images of them, sought to identify them, kept an archive about them, and wrote about them. ¶¶ 74, 184–188. Those acts constitute core protected First Amendment activity. *See Claiborne Hardware*, 458 U.S. at 909–10 (holding protected the reading aloud and publishing of the names of boycott violators: "Speech does not lose its protected character, however, simply because it may embarrass others or coerce them into action."); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[T]he creation and dissemination of information are speech within the meaning of the First Amendment."); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979) (state may not punish publication of lawfully obtained, truthful information about a matter of public significance "absent a need to further a state interest of the highest order"); *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values . . . ." (internal quotation marks omitted) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983))); *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 379 (S.D.N.Y. 2015) (reasoning that "photographing and filming receive First Amendment protection as a general matter (at least when they are 'expressive')").

Given the "obvious alternative explanation" of protected First Amendment activism, the convoluted unlawful purpose Plaintiff asks the Court to infer "is not a plausible conclusion."

*Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). Even viewed in the light most favorable to Plaintiff, the facts pleaded are "merely consistent with" knowing agreement to violate Plaintiff's rights and "stop[] short of the line between possibility and plausibility." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). The Complaint pleads no facts showing that Muslin acted for the purpose of depriving anyone of a right.

### C. Muslin Was Not Engaged in Joint Action *with* the Government

Giving information to others who then make independent decisions does not by itself make the informant a party to those decisions. A private party becomes a joint actor with the government only if he is "a willful participant in joint activity with the State or its agents." *Ciambriello*, 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). In *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 270, 272 (2d Cir. 1999), a rental business called the police about a disturbance by a customer who refused to pay, and the officer, on his own initiative, warned the customer that he could be arrested for larceny. The Second Circuit affirmed summary judgment for the business: its "provision of background information to a police officer does not by itself make [it] a joint participant in state action," and where an officer "exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct." *Id.* at 272. The Tenth Circuit, in a decision cited in *Ginsberg*, applies the same rule to § 1985: "The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985." *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983).

The rule holds even when the private party deals with the authorities regularly (which is not alleged here): "[a]lleging merely that a private party regularly interacts with a state actor

does not create an inference of agreement to violate a plaintiff's rights." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) (adopting report and recommendation in relevant part). Nor does an attempt to influence the government's decision by itself make the private party a joint actor. *Id.* In any event, the Complaint does not even allege that Muslin provided information directly to the government, only that his information was used by Canary Mission, and that Canary Mission's information was used by the government.

Even accepting as true the allegations that Muslin was Canary Mission's "operative," that it "relied on" his "dossier," and that Canary Mission passed its profile of Plaintiff to the government, which acted on it, the claim still fails to allege a conspiracy. ¶¶ 182, 184, 189, 246, 256. Muslin would have done no more than an informant who spoke to the authorities directly, and merely furnishing information does not establish participation in a conspiracy.

Moreover, it was the government, not Muslin, that determined whether and when to arrest Plaintiff. ¶¶ 259, 261, 263. "Whatever defendant's role in initially implicating plaintiff in any misconduct, there can be no liability flowing to defendant based upon the state's subsequent and independent decision to pursue a criminal prosecution against plaintiff." *Heaning v. NYNEX-N.Y.*, 945 F. Supp. 640, 651 (S.D.N.Y. 1996). Calling that decision a rubber stamp, ¶ 264, does not change the Complaint's own account of what the government relied on. *See supra* Statement of Facts § D. If reporting a crime to the police does not by itself make the reporter a co-conspirator in the arrest, giving information to a private organization that later passes it to the government likewise does not, without more, establish an agreement. See *Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 402–05 (S.D.N.Y. 2004) (where a company manager summoned an employee to the store and the store manager then called the police, "[e]ven assuming that [the first manager] knew that the New Rochelle police [officers] would be at Home Depot . . . , such

knowledge would be insufficient to establish 'willful collaboration' with the police department"). The Complaint pleads no fact showing that Muslin knew what the Federal Defendants would do or when they would act.

Section 1985(3) does not reach everyone whose publications may have influenced officials. In *Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.*, 288 F. Supp. 2d 273, 280–81 (E.D.N.Y. 2003), *aff'd sub nom. Friends of Falun Gong v. Pac. Culture*, 109 F. App'x 442 (2d Cir. 2004) (summary order), Falun Gong practitioners sued two newspapers and their editors and reporters under § 1985(3) over articles that portrayed them "in an exceedingly bad light." *Id.* at 281. The court dismissed, holding that because the plaintiffs did not claim "any state involvement in the alleged conspiracy," their theory that the defendants had "influenced the state to deprive them of their rights under the First Amendment" stated no deprivation-clause claim. *Id.* at 280. It warned that extending § 1985(3) "to cover every case in which an argument could be made that press reports, even libelous press reports, have influenced the decision-making of state officials would be to turn § 1985(3) into the generalized federal tort law that it was clearly not intended to be." *Id.* at 281. Count I should be dismissed against Muslin.

## POINT III

## NO FACT PLEADED SHOWS THAT MUSLIN JOINED A CONSPIRACY INVOLVING THE GOVERNMENT OR AIMED AT INTERFERING WITH INTERSTATE TRAVEL

### A. No Fact Pleaded Shows that Muslin Joined a Conspiracy Involving, or Aimed at Influencing, the Government

Because three of the four rights Count I invokes run only against the government, *see supra* Point I, Count I can reach Muslin on those theories only through a conspiracy involving the government or aimed at influencing it. A conspiracy to infringe First Amendment rights violates § 1985(3) only if "the State is involved in the conspiracy or that the aim of the

conspiracy is to influence the activity of the State." *Carpenters*, 463 U.S. at 830. To show state involvement, a plaintiff is required to allege facts supporting a plausible inference that "the public entity conspired with the private defendants to deprive plaintiff of his rights." *Peavey*, 775 F. Supp. at 78 (dismissing claims where the state agency allegedly "agreed not to stir"); *see Friends of Falun Gong*, 288 F. Supp. 2d at 280 (absence of state involvement "fatal" to First Amendment § 1985(3) claim against newspaper publishers).

No fact pleaded shows Muslin joined a conspiracy involving the government. The Complaint attributes the alleged agreement and communications with the government to Betar, Canary Mission, or the Private Defendants as a group, never to Muslin by name. ¶¶ 3–4, 154, 246, 479; *see supra* Points II.A–B. Even an agreement between Muslin and Canary Mission would be a private one. It would make him a party to Canary Mission's alleged agreement with the government only if he knew of that agreement and joined to further its unlawful objective, *see Webb*, 340 F.3d at 110; *Bray*, 506 U.S. at 276, and no fact pleaded shows either. *See supra* Points II.A–B.

Nor does an alleged aim to influence the government reach Muslin. Since *Bray*, "there is no viable claim under the deprivation clause of § 1985(3) for a private conspiracy aimed at rights that are protected only against state encroachment." *Friends of Falun Gong*, 288 F. Supp. 2d at 280 (rejecting reliance on *Carpenters*' "influence" language). Even under *Carpenters*' formulation, influencing the government must be the aim of a conspiracy the defendant joined, and it must be his own purpose. *See Carpenters*, 463 U.S. at 830; *Bray*, 506 U.S. at 276; *id.* at 275 n.5 ("The deprivation, whether direct or indirect, must still have been the *purpose* of the defendant's action."). Count I alleges that the conspirators collectively "sought to leverage state

power." ¶ 483. That allegation supports liability against Muslin only if he joined the conspiracy, and no fact pleaded shows that he did. *See supra* Points II.A–B.

Count I does not invoke the hindrance clause, which reaches conspiracies "for the purpose of preventing or hindering the constituted authorities of any State or Territory" from securing equal protection. 42 U.S.C. § 1985(3); *see supra* Point I; ¶¶ 479, 483. Nor would that clause reach Muslin: the officials alleged to have acted against Plaintiff are federal, and "the fact that public officials might be 'influenced' to act based upon press reports hardly rises to the level of hindering or preventing." *Friends of Falun Gong*, 288 F. Supp. 2d at 281.

### B. No Fact Pleaded Shows that Muslin's Conduct Was Aimed at Interfering with Interstate Travel

The fourth right, interstate travel, is protected against private interference "in at least some contexts." *Bray*, 506 U.S. at 274. A purely private § 1985(3) conspiracy must aim at interfering with that specific right. *Id.* No paragraph that names Muslin mentions travel, and no fact pleaded shows that Muslin intended to interfere with interstate travel. *See id.* at 276.

## POINT IV

## NOTHING PLEADED SHOWS THAT MUSLIN ACTED WITH THE REQUIRED CLASS-BASED ANIMUS

A § 1985(3) conspiracy must be motivated by "class-based, invidious discriminatory animus." *Thomas*, 165 F.3d at 146 (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)); *accord Carpenters*, 463 U.S. at 829. The requirement is one of motive: the defendant must have taken his action "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Bray*, 506 U.S. at 275–76 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Plaintiff alleges that he is Palestinian and Muslim. ¶ 1. Accepting that allegation, Plaintiff must plead facts showing that Muslin himself

acted "because of" Plaintiff's Palestinian national origin or Muslim religion. *See Bray*, 506 U.S. at 275–76; *see also Carpenters*, 463 U.S. at 829.

The facts pleaded about Muslin concern protest activity and immigration status, and do not plausibly show that he acted because of national origin or religion. His chat post asked how anyone could know "whether any given troublemaker is in fact a foreigner or on a visa." ¶ 186. His archive "singl[ed] out non-citizen students" and tagged Plaintiff with a "foreign student alert." ¶¶ 184, 187. His offer of help concerned identifying people photographed at "a particular protest involving support for Palestinians." ¶ 185. He allegedly described "these protestors" and "Palestinian rights advocates" as "roaches." ¶¶ 74, 185. The only words the Complaint attributes to Muslin, "roaches" and his two chat posts, say nothing about national origin or religion, and no act attributed to him concerns Muslims. Those facts do not plausibly show that Muslin acted, even in part, because of Plaintiff's Palestinian national origin or Muslim religion. ¶¶ 74, 184–187.

The Complaint's description of the people Muslin photographed, ¶ 184, does not by itself establish why he photographed them. Paragraph 186 assigns him a purpose only in conclusory terms. ¶ 186; *see supra* Point II.B. Without supporting facts, the allegation that Muslin "shared [Canary Mission's] animus," ¶ 189, is a conclusion that the Court must set aside. *See Thomas*, 165 F.3d at 147 (affirming summary judgment where plaintiff "alleged no facts" showing class-based animus); *supra* Points II.A–B. The allegations that the Canary Mission Defendants as a group harbor "anti-Palestinian animus" describe no act or word of Muslin's. ¶¶ 3, 191. Nor does a focus on non-citizens alone plausibly show animus toward any specific national origin or religion. *See Iqbal*, 556 U.S. at 682 (explaining that a legitimate policy directed at individuals

suspected of links to the September 11 attacks "would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims").

Under Second Circuit law, targeting political opponents is not targeting a protected class. In *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir. 1989), the plaintiff alleged that he was discriminated against as a political opponent and vocal critic of the defendants. The Second Circuit applied the rule that "'those who are in political and philosophical opposition to [the defendants], and who are, in addition, outspoken in their criticism of the [defendants'] political and governmental attitudes and activities' do not constitute a cognizable class under section 1985." *Id.* at 695 (alteration in original) (quoting *Rodgers v. Tolson*, 582 F.2d 315, 317 (4th Cir. 1978)).

Protected classes must possess "the type of inherited or immutable characteristics sufficient to satisfy the class-based animus requirement." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *accord Berenson v. Gottlieb*, No. 25-2709-cv, 2026 WL 3135334, at *3 (2d Cir. Oct. 20, 2026) (summary order). Political opposition is not such a characteristic, and the Complaint pleads no fact showing that Muslin acted because of Plaintiff's Palestinian national origin or Muslim religion. Because the Complaint does not plausibly allege that Muslin acted with the required class-based discriminatory animus, Count I should be dismissed against him.

## POINT V

## COUNT II FAILS WITH COUNT I, IS TIME-BARRED, AND PLEADS NO FACT SHOWING KNOWLEDGE OR POWER TO PREVENT A CONSTITUTIONAL VIOLATION

### A. Count II Depends on Count I

"[A] § 1986 claim must be predicated upon a valid § 1985 claim." *Thomas*, 165 F.3d at 147; *accord Mahoney v. Nat'l Org. for Women*, 681 F. Supp. 129, 135 (D. Conn. 1987)

("[W]here a plaintiff has no cause of action under Section 1985, he can sustain no claim for neglect to prevent under Section 1986."). For the reasons stated in Point I, Count I fails against every Defendant, and Count II fails with it. *See supra* Point I.

**B. Count II Is Time-Barred**

A claim under § 1986 must be "commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986; *accord Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001) ("For actions brought pursuant to § 1986, the limitations period is one year."). Federal law governs accrual, and a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)) (addressing § 1983 claims). The wrongs Muslin allegedly failed to prevent are Plaintiff's "targeting, surveillance, arrest, transfer, imprisonment, and attempted deportation." ¶ 484.

Count II is untimely against Muslin on the face of the Complaint. Plaintiff was arrested on March 8, 2025, transferred soon after, and released on June 20, 2025. ¶¶ 32, 263, 266. The Complaint identifies no statement or act by Muslin dated after January 30, 2025. *See* ¶¶ 45, 74, 182–190. Even using Plaintiff's June 20, 2025 release as the accrual date, the one-year limitations period expired on June 22, 2026, accounting for the intervening weekend. *See* Fed. R. Civ. P. 6(a)(1)(C). Plaintiff filed this action on July 14, 2026, after that deadline. ECF No. 1. Allegations of continuing conduct do not postpone accrual against Muslin. The Complaint alleges that the Federal Defendants are "continuing" to pursue Plaintiff's detention and deportation, and that Defendants "continued the conspiracy, seeking to re-detain" him. ¶¶ 486, 488–489. Those allegations describe the government's conduct. Paragraph 489 attributes it to the

Defendants as a group and names no act by Muslin, and re-detention and removal are steps only the government—not Muslin—can take.

Moreover, the continuing violation doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a 'serial violation[ ],'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration in original) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)), and "[t]he mere fact that the effects" of a violation continue does not make the violation "a continuing one," *id.* at 222 (alteration in original) (quoting *Deters v. City of Poughkeepsie*, 150 F. App'x 10, 12 (2d Cir. 2005) (summary order)). Nor does the conspiracy label extend the period. "[A]ccrual of a cause of action based on specific acts of which a plaintiff was aware cannot be postponed, nor can a limitations period be tolled, simply by alleging that the acts were taken pursuant to a conspiracy." *Pearl*, 296 F.3d at 87; *accord Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156–57 (2d Cir. 1995) ("The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs." (quoting *Singleton*, 632 F.2d at 192)). Plaintiff knew of his arrest, transfer, and detention when they occurred, and his claim against Muslin accrued then.

Tolling does not save Count II either. Equitable tolling for a plaintiff "prevented in some extraordinary way from exercising his rights" is reserved for one who "could show that it would have been impossible for a reasonably prudent person to learn" about his cause of action. *Pearl*, 296 F.3d at 85 (emphasis omitted) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)). Absent a fiduciary relationship, an estoppel barring a limitations defense requires active concealment by the wrongdoer. *See id.* at 88. The Complaint pleads no basis for either as to Muslin. It alleges no concealment by Muslin, and it pleads no fact showing that Plaintiff could not have learned of the allegations against Muslin within the limitations period.

### C. No Fact Pleaded Shows Knowledge of an Impending Wrong or Power to Prevent It

Count II pleads only "a formulaic recitation of the elements of a cause of action," which "will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see* ¶ 487. Section 1986 requires that a defendant have "knowledge that any of the wrongs conspired to be done . . . are about to be committed," and have "power to prevent or aid in preventing the commission of the same . . . ." 42 U.S.C. § 1986 (emphasis added). Setting aside invalid group pleading, no fact alleged shows that Muslin knew an arrest was "about to be committed," or that an arrest would be unlawful. Nor does any factual, non-conclusory allegation show that Muslin had "power" over the government sufficient "to prevent or aid in preventing" Plaintiff's arrest, transfer, detention, or removal proceedings. 42 U.S.C. § 1986; ¶¶ 263, 266–267, 484. Paragraph 484 also lists "targeting" and "surveillance." As applied to Muslin, those words refer to the photographing, archiving, posting, and reporting. ¶¶ 184–188. Those activities do not, standing alone, establish a constitutional deprivation or knowledge of an impending violation. *See supra* Point I. Paragraph 487's description of "all Defendants" as "organizers, planners, leaders, and executors" supplies no facts showing Muslin's knowledge or power to prevent the alleged wrongs. Count II therefore fails as to Muslin and should be dismissed as against him.

## POINT VI

## THE IMMIGRATION AND NATIONALITY ACT BARS PLAINTIFF'S CLAIMS

Muslin joins in, and incorporates by reference, the Federal Defendants' argument that the Immigration and Nationality Act ("INA") deprives this Court of jurisdiction over Plaintiff's claims. *See* Mem. Off. Cap. Defs. Point I, at 7–12; Mem. Indiv. Cap. Defs. Point I, at 7–8 (statutory bars "apply equally to damages claims"). The Federal Defendants show that 8 U.S.C.

§ 1252(a)(5) and (b)(9) channel all legal and factual questions arising from removal proceedings into a petition for review of a final order of removal in the court of appeals. Mem. Off. Cap. Defs. Point I.1–2, at 8–10. The INA provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id.* § 1252(g).

The Third Circuit held that § 1252(b)(9) stripped the habeas court of jurisdiction over Plaintiff's challenges to his detention and removal proceedings, which he must raise in a petition for review of a final order of removal. *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026). Count I seeks damages for those same acts, ¶¶ 483–486, and Count II depends on Count I. Count I alleges that Defendants agreed "to identify for retribution–via arrest, detention, and deportation–Palestinians," Plaintiff among them. ¶ 481; *see* ¶¶ 154, 189. That claim arises from "the decision or action by the Attorney General to commence proceedings" against Plaintiff, and § 1252(g) bars "any cause or claim" so arising. *See* Mem. Off. Cap. Defs. Point I.3, at 10–12; *Golding v. DHS/ICE*, No. 20-CV-8679 (VSB), 2024 WL 3012620, at *4 (S.D.N.Y. June 13, 2024) (barring *Bivens* claim against officer for notice to appear that "commenced a removal proceeding"); *Torres-Jurado v. United States*, No. 20-CV-04575 (DG) (CLP), 2024 WL 1092527, at *6 (E.D.N.Y. Mar. 12, 2024) (barring false arrest and imprisonment claim arising

from decision to "execute removal orders"). The claims against Muslin should therefore be dismissed under Rule 12(b)(1).

## CONCLUSION

Muslin respectfully requests that the Court dismiss Counts I and II of the Complaint as against him with prejudice.[5]

Dated: New York, New York
November 3, 2026

Respectfully submitted,

NATIONAL JEWISH ADVOCACY CENTER

By: /s/ *Alan H. Scheiner*

Alan H. Scheiner
Senior Litigation Counsel
3 Times Square, Suite 512
New York, NY 10036
Tel: (332) 278-1100 x 754
alan@njaclaw.org
*Attorneys for Defendant Victor Muslin*

[5] To the extent that Plaintiff's claims are dismissed solely on the basis of jurisdictional arguments under the INA, Muslin seeks dismissal without prejudice to further proceedings in the appropriate forum. If the Complaint is dismissed on a substantive basis, leave to replead would be futile: Count II is time-barred, and Count I's defects are substantive. As set forth above, for the reasons stated in the Federal Defendants' memoranda, there was no violation of Plaintiff's constitutional rights as a matter of law. And there is no reason to believe that Muslin, an individual private citizen with no connections to the government, conspired with state officials to deprive Plaintiff of any such rights. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum of law complies with the word-count limitation of that Rule. The memorandum contains 8,597 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, as counted by the word-processing program used to prepare it.

/s/ Alan H. Scheiner
Alan H. Scheiner