UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MAHMOUD KHALIL,

Plaintiff,

- against -

THE HERITAGE FOUNDATION, et al.,

Defendants.
----------------------------------------------------------------------X

Case No. 1:26-cv-05929

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BETAR ZIONIST ORGANIZATION, INC., BETAR ZIONIST MOVEMENT, INC., AND RONN TOROSSIAN'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

A. The Betar Defendants ........ 2

B. Defendant Ronn Torossian ........ 5

C. Plaintiff's Conspiracy Theory ........ 6

LEGAL STANDARD ........ 7

A. Motion to Dismiss Standard ........ 7

B. Standard to State a Claim Under 42 U.S.C. § 1985(3) ........ 7

ARGUMENT ........ 8

A. Plaintiff Fails to Plausibly State a Conspiracy ........ 8

1. Plaintiff Fails to Allege there was a Meeting of the Minds to Form a Conspiracy ........ 8

2. Defendant Betar's Freedom of Association is Insufficient to Form a Conspiracy ........ 10

B. Plaintiff Fails to Show that He Was Targeted by Any Betar Entity Due to a Racial or Class-Based Animus ........ 13

1. An Advocacy Group Does Not Establish a Protected Class ........ 13

2. Plaintiff Fails to Plausibly Connect Betar to an Agreement Motivated by Protected-Class Animus ........ 18

C. Betar's Actions are Protected by the First Amendment ........ 22

D. Plaintiff Fails to State a Claim Against Defendant Ronn Torossian ........ 24

1. The Complaint Does Not Plausibly Allege Torossian's Knowing Participation in an Unlawful Agreement ........ 24

2. Defendant Torossian did not Personally Join the Alleged Conspiracy ........ 24

E. Plaintiff's Claims Under 42 U.S.C. § 1986 Fail ........ 26

1. Plaintiff's Claims Under 42 U.S.C. § 1986 Fail Because There is No Conspiracy Under 42 U.S.C. § 1985(3) ........ 26

2. Plaintiff's Claims Under 42 U.S.C. § 1986 Fail Because They are Time Barred ........ 27

F. The Moving Defendants Incorporate Co-Defendants' Arguments by Reference to the Extent they Relate to Mr. Khalil's Failure to State a Claim, or Any Other Applicable Basis ........ 28

CONCLUSION ........ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-md-2481 (KBF), 2015 WL 6472656 (S.D.N.Y. Oct. 23, 2015)....25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....7, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....7, 11, 12, 13

*Berenson v. Biden*,
791 F. Supp. 3d 398 (S.D.N.Y. 2025)....17

*Betts v. Shearman*,
751 F.3d 78 (2d Cir. 2014)....12

*Boone v. Redevelopment Agency of the City of San Jose*,
841 F.2d 886 (9th Cir. 1988)....23

*Bray v Alexandria Women's Health Clinic*,
506 U.S. 263 (1993)....7, 13, 15, 21

*Brito v. Arthur*,
403 Fed. Appx. 620 (2d Cir. 2010)....7, 8, 13

*Carvel v. Franchise Store Realty Corp.*,
No. 08 Civ. 8938 (JGK), 2009 WL 4333652 (S.D.N.Y. Dec. 01, 2009)....27

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018)....9

*City of Columbia v. Omni Outdoor Adver., Inc.*,
499 U.S. 365 (1991)....12, 24

*Delee v. Hannigan*,
729 Fed. Appx. 25 (2d Cir. 2018)....26

*Dove v. Fordham Univ.*,
56 F.Supp.2d 330 (S.D.N.Y. 1999)....8, 24, 25

*Empress LLC v. City & Cnty. of S.F.*,
419 F.3d 1052 (9th Cir. 2005)....23, 24

*In re Estate of Gifford*,
535 N.Y.S.2d 154 (3d Dep't 1998) ....................5

*Farbstein v. Hicksville Pub. Library*,
254 Fed. Appx. 50 (2d Cir. 2007) ....................7

*Forro Precision, Inc. v. IBM*,
673 F.2d 1045 (9th Cir. 1982) ....................22

*Fulani v. McAuliffe*,
No. 04 Civ. 6973 (LAP), 2005 WL 2276881 (S.D.N.Y. Sept. 07, 2005) ....................17

*Gilliam v. Greenberg Traurig LLP*,
No. 23-CV-06144 (PMH), 2024 WL 4043348 (S.D.N.Y. Sept. 04, 2024) ....................8, 27

*Ginsberg v. Healey Car & Truck Leasing, Inc.*,
189 F.3d 268 (2d Cir. 1999) ....................12

*Harrison v. KVAT Food Management, Inc.*,
766 F.2d 155 (4th Cir. 1985) ....................17

*Holowecki v. Fed. Exp. Corp.*,
440 F.3d 558 (2d Cir. 2006) ....................3

*Howard v. Mun. Credit Union*,
No. 05-CV-7488 (LAK), 2008 WL 782760 (S.D.N.Y. Mar. 25, 2008) ....................10, 24

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007) ....................7

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*,
968 F.2d 286 (2d Cir. 1992) ....................15, 16

*Keating v. Carey*,
706 F.2d 377 (2d. Cir. 1983) ....................17

*Kesner v. Dow Jones & Co.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021) ....................11

*Khan v. City of New York*,
No. 14-CV-4665 (SLT) (VMS), 2016 WL 1128298 (E.D.N.Y. Feb. 01, 2016) ....................9

*LeBlanc–Sternberg v. Fletcher*,
67 F.3d 412 (2d Cir.1995) ....................26

*Martin v. New York State Dep't of Corr. Servs.*,
115 F. Supp. 2d 307 (N.D.N.Y. 2000) ....................15, 16

*McCray v. City of New York*,
No. 03 Civ. 9685(DAB), 2007 U.S. Dist. LEXIS 90875, 2007 WL 4352748 (S.D.N.Y. Dec. 11, 2007)....................24

*Morales v. New York*,
752 F.3d 234, 238 (2d Cir. 2014)....................21

*Murphy v. City of Stamford*,
634 Fed. Appx. 804 (2d Cir. 2015)....................25

*N.A.A.C.P. v. Button*,
371 U.S. 415 (1963)....................10

*Posr v. Court Officer Shield No. 207*,
180 F.3d 409 (2d Cir. 1999)....................16, 21

*Reid v. City of New York*,
No. 20 Civ. 9243 (KPF), 2022 WL 2967359 (S.D.N.Y. July 27, 2022)....................16

*Rich v. New York*,
No. 21 CIV. 3835 (AT), 2022 WL 992885 (S.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Rich v. Miller*, No. 25-1387-CV, 2026 WL 2683000 (2d Cir. Sept. 14, 2026)....................27

*Richard v. Leclaire*,
No. 9:15-CV-00006, 2017 WL 4349381 (N.D.N.Y. Sept. 29, 2017)....................25

*Sant v. Stephens*,
821 F. Appx. 42 (2d Cir. 2020)....................26

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006)....................22

*Thomas v. Roach*,
165 F.3d 137 (2d. Cir. 1999)....................8, 26

*Torres v. Carlson*,
No. 25-cv-3474 (CM), 2026 WL 1534439 (S.D.N.Y. June 01, 2026)....................15, 16, 18

*Tsegaye v. Impol Aluminum Corp.*,
No. 01-cv-5943, 2003 WL 221743 (S.D.N.Y. Jan. 30, 2003)....................5

*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*,
463 U.S. 825 (1983)....................17

*United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*,
389 U.S. 217 (1967)....................23

*United Mine Workers of America v. Pennington*,
381 U.S. 657 (1965)....................23

*United States v. Rubin*,
844 F.2d 979 (2d Cir.1988)....................26

*Vail v. City of New York*,
No. 18-CV-9169 (JPO), 2020 WL 127639 (S.D.N.Y. Jan. 10, 2020)....................26

*Webb v. Goord*,
340 F.3d 105 (2d Cir. 2003)....................8, 9

*Weiss v. Willow Tree Civic Ass'n*,
476 F.Supp. 803 (S.D.N.Y. 1979)....................10

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000)....................23

*Zeleny v. Brown*,
No. 17-cv-07357-RS, 2019 WL 3430734 (N.D. Cal. July 30, 2019)....................22

**Statutes**

42 U.S.C. § 1983....................26

42 U.S.C. § 1985.................... *passim*

42 U.S.C. § 1985(3).................... *passim*

42 U.S.C. § 1986.................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8....................10, 24

Fed. R. Civ. P. 12(b)(6)....................1, 7

# PRELIMINARY STATEMENT

Plaintiff Mahmoud Khalil (hereinafter "Plaintiff" or "Khalil") brings this action under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 against Defendants Betar Zionist Organization, Inc. ("BZO"), Betar Zionist Movement, Inc. ("BZM") (hereinafter, BZO and BZM collectively "Betar") and Ronn Torossian (hereinafter "Torossian"; together with BZO and BZM, the "Moving Defendants"). Plaintiff also names Betar World, an organization alleged to be based in Israel (Compl. ¶38) that has not been served (ECF 71).

The Complaint alleges that Betar, Betar World, Heritage Foundation, Canary Mission, "their respective leaders and agents" (the "Private Defendants") conspired with six federal officials (the "Federal Defendants") to arrest and deport non-citizen Palestinians and their supporters, beginning with Plaintiff Mahmoud Khalil. (Compl. ¶¶3–4). The Moving Defendants dispute that the alleged advocacy and information sharing plausibly establish their knowing participation in an agreement to violate those rights. Opposition to activity supporting, sympathizing, applauding and affiliated with Hamas, a federally designated terrorist entity that committed the gruesome murders of over 1,200 individuals and kidnapping of more than 200 individuals, including Americans, on October 7, 2023 does not establish the class-based discriminatory purpose required by § 1985(3). The complaint alleges both the Private Defendants and the Federal Defendants conspired in order to deprive Plaintiff of his "constitutionally-protected rights to freedom of speech, freedom from punitive detention, equal protection of the law, and interstate travel." (Compl. ¶479).

This memorandum of law is respectfully submitted in support of the Moving Defendants' Motion to Dismiss the Complaint on the ground that Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6). Specifically, Plaintiff has failed to plausibly allege the Moving Defendants' knowing agreement to violate protected rights or the requisite class-based discriminatory purpose

under § 1985(3). The Moving Defendants also seek dismissal to the extent Plaintiff's claims rest solely on protected advocacy or genuine petitioning. To the extent not fully set forth herein, Betar and Torossian adopt arguments submitted by co-defendants as if fully set forth herein.

## STATEMENT OF FACTS

The Court is respectfully referred to the Complaint for a full recitation of the circumstances and allegations relied upon by Plaintiff in bringing this action. Plaintiff is a U.S. lawful permanent resident and a Palestinian originally from Syria. (Compl. ¶¶27-28). He alleges that the challenged conduct targeted his Palestinian identity, Muslim faith, and advocacy for Palestinian rights. (Compl. ¶¶27, 479-480.) The Moving Defendants maintain that their advocacy concerned the views and activities of individuals they perceived as supporting Hamas or seeking the destruction of the State of Israel, rather than those individuals' race, nationality, or religion.

Plaintiff asserts claims under 42 U.S.C. §§ 1985(3) and 1986 against numerous private organizations, individuals and federal officials. Plaintiff alleges that these conspired to deprive him of his constitutional rights. The following summary addresses the allegations concerning the Moving Defendants and the context in which the Complaint places their conduct.

### A. The Betar Defendants

Defendant Betar Zionist Organization, Inc. (BZO) is a 501(c)(3) tax-exempt organization originally based out of New York. (Compl. ¶36) Defendant Betar Zionist Movement (BZM) is an organization based out of Delaware. (Compl. ¶37). The Complaint refers to BZO and BZM collectively as "Betar USA" and alleges operational continuity and an anticipated transfer of assets. (*Id.*). According to the Complaint, BZO transitioned to BZM on January 14, 2026. (Compl. ¶37). However, Plaintiff's Complaint against Betar pre-date the existence BZM and are thus in reference to BZO's actions. The Complaint also names Betar World, a foreign organization based in Israel, which is a defendant that has not been served and alleges that the entities operate together.

(Compl. ¶¶38-39). The Moving Defendants dispute Plaintiff's treatment of these separate entities as interchangeable and the attribution of conduct to them collectively.

Plaintiff begins to build his case against Betar by first attacking its historical roots and founder Vladimir "Ze'ev" Jabotinsky, from over one century ago, in an attempt to frame the entire movement and organization in a negative light. (Compl. ¶¶59-60). That historical discussion does not establish these Defendants' participation in any alleged conspiracy – both BZO and BZM were founded after the Hamas terrorist attack on Israel on October 7, 2023. Further, the Complaint references and selectively picks quotes from the New York State Office of the Attorney General's ("OAG") Assurance of Discontinuance (hereto the "OAG Discontinuance") following its investigation into BZO to show some racial or class-based animus motivating BZO's actions. (Compl. ¶¶68-70). Notably, Plaintiff does not attach the document that he relied upon to establish his claim in the Complaint. Betar attaches and highlights sections that undermine Plaintiff's claims in support of the instant motion. S*ee Holowecki v. Fed. Exp. Corp.,* 440 F.3d 558, 565–66 (2d Cir. 2006) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss[.]") (citation omitted); *see also* Slotnick Declaration in Support of Motion to Dismiss, Exhibit 1 ("Ex. 1").

The OAG Discontinuance states that BZO neither admitted nor denied the OAG's findings and the OAG Discontinuance is not an admission of liability. (Ex. 1 ¶39). It also describes conduct directed at Muslim, Arab and Palestinian, ***and*** Jewish individuals, including Jewish individuals "not aligned with their vision of Judaism or Israel" and that they sought to "fight back against these terrorists". (Ex. 1 ¶¶10, 22). The Moving Defendants also rely on the context of the quoted social

media posts, which describe opposition to individuals characterized as anti-American, Anti-Israel, pro "jihadi" or pro Hamas (terrorist) supporters, as discussed below.

For starters, Plaintiff stated that Betar said "it was targeting certain individuals because their speech or expressive activities were 'pro-Palestinian.'" (Compl. ¶164). The Complaint itself repeatedly quotes Betar as criticizing individuals it described as "pro-Hamas" regardless of their individual race, nationality, or religion. (Compl. ¶¶12, 155, 175, 248, 277, 286, 307, 323, 331, 355, 370, 376, 380, 389). Further, in the OAG Discontinuance, the Attorney General's office says that Betar "also targets Jewish people when those individuals profess views Betar deems not aligned with their vision of Judaism or Israel" (Ex. 1 ¶10), said "[o]f course we place Jews on lists" (Ex. 1 ¶12), and "forced 'beepers' onto people who appeared Muslim or Jewish and supported the Palestinian cause" (Ex. 1 ¶13). The Moving Defendants rely on these statement as context for their position that their opposition concerned perceived political views and activities rather than protected class membership.

The Complaint quotes Torossian as stating that "Betar's role is to do everything it can to protect Jewish people" against anyone that supports Hamas and spreads hate. (Compl. ¶177). As to Plaintiff, the Complaint quotes Betar as asserting that he "created hate on campus." (Compl. ¶284). The Moving Defendants dispute that these statement, considered with the remaining allegations, plausibly establish their participation in an agreement to violate Plaintiff's constitutional rights.

It is not surprising that Betar would clash with the Plaintiff given that his political beliefs are in direct opposition to Betar's surrounding the tense and fraught issue of the worldwide anti-Israel movement which emerged at an unprecedented level after the October 7, 2023 terrorist attacks by Hamas against Israel. (Compl. ¶108). The diametrically opposed political viewpoints

espoused by Plaintiff (who sympathized and supported a terrorist movement) and Betar (who sought to expose terrorist sympathizers) do not establish a conspiracy to deprive Plaintiff of his constitutional rights.

**B. Defendant Ronn Torossian**

Defendant Torossian is only mentioned five (5) times in the lengthy Complaint. (Compl. ¶¶40, 67, 68 176, 177). The Torossian allegations relate to him being the "founder and chairman of Betar USA." (Compl. ¶40). Outside of his introductory paragraph as a defendant (Compl. ¶40), two of the paragraphs in which he is mentioned surround (1) his political beliefs reflecting the election of New York Mayor Zohran Mamdani, and (2) his signature being on the OAG Discontinuance (Compl. ¶¶67-68) which does not constitute any liability. *See Tsegaye v. Impol Aluminum Corp*., No. 01-cv-5943, 2003 WL 221743, at *6 (S.D.N.Y. Jan. 30, 2003) ("A corporate agent who signs a contract within the authority of his official capacity 'will not be personally bound unless there is clear and explicit evidence that the agent intended to substitute his personal liability for that of his principal or that fraud is involved.'"*(quoting In re Estate of Gifford,* 535 N.Y.S.2d 154, 156 (3d Dep't 1998)). The other two paragraphs are quotes he made in reference to Defendant Betar and their actions, including statements about involvement with Project Esther and that Betar's purpose was to protect Jews. (Compl. ¶¶176, 177).

The Moving Defendants contend that the statements attributed to Torossian do not sufficiently identify his knowing assent to an agreement to violate Plaintiff's constitutional rights. The issue is the substance of those allegations, rather than whether he acted outside his association with Betar. Even read in the light most favorable to Plaintiff, the allegations about Torossian and Torossian's membership in Betar do not establish that Torossian participated in an unlawful agreement.

### C. Plaintiff's Conspiracy Theory

Plaintiff's allegations center around the Heritage Foundation's Project Esther, which Plaintiff alleges outlined a plan to "identify and target pro-Palestinian, non-citizen students and scholars, who would then be arrested and deported by the federal defendant participants in the conspiracy." (Compl. ¶3). According to the Plaintiff's unsubstantiated and conclusory Complaint, in order to make the plan operational, the Heritage Foundation Defendants needed a "coalition of private organizations" to "build and coordinate" the plan's goal of identifying "high-level targets…for constitutionally-protected support of Palestinian rights." (Compl. ¶7). There are no legally sufficient facts that connect Betar or Torossian to an agreement to violate protected rights, even considering the alleged communications and coordination.

Plaintiff alleges that to achieve the maximum effect, the plan needed the participation of federal officials who "would have the power to carry out the plans for escalated retribution and public intimidation." *Id*. According to the Plaintiff, the plan was operationalized days after the Trump Administration was elected to the White House in 2024. (Compl. ¶9). Plaintiff claims that in November 2024, "Defendant Betar began identifying Palestinians and their supporters for the Federal Defendants to arrest, detain, and deport and, by January 2025, openly admitted to communicating with Defendants Stephen Miller and Marco Rubio about the individuals it had selected for federal government retribution." *Id*. Although Plaintiff seemingly alleges an agreement (Compl. ¶246) the supporting facts do not plausibly establish these Defendants' agreement to its alleged unlawful objective.

According to the Plaintiff, the arrests and/or attempted arrests of the Plaintiff and "at least eight other targets" followed a common process. (Compl. ¶11). Allegedly, Defendant Betar and/or Defendant Canary Mission would identify pro-Palestinian individuals and warn they would be subject to arrest and deportation. *Id*. Then, shortly afterwards, Federal Defendants would either

revoke the individuals' visas and/or charge them as removable under the Immigration and Nationality Act. *Id*. Then the individuals would be arrested and sent to Immigration and Customs Enforcement jails. *Id*. These allegations are not enough to substantiate a conspiracy.

## LEGAL STANDARD

### A. Motion to Dismiss Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed when the plaintiff fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligations to provide the grounds of his entitle[ment] to relief requires the more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

### B. Standard to State a Claim Under 42 U.S.C. § 1985(3)

In order to state a claim for conspiracy under 42 U.S.C. § 1985(3), the Plaintiff must allege

> (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen."

*Farbstein v. Hicksville Pub. Library*, 254 Fed. Appx. 50, 51 (2d Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007)). Further, the Plaintiff must allege "(1) some racial or other class-based discriminatory animus underlying the [Defendants'] actions; and (2) that the conspiracy was aimed at interfering with [Plaintiff's] protected rights." *Brito v. Arthur*, 403 Fed. Appx. 620, 621 (2d Cir. 2010) (citing *Bray v Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)). However, complaints that attempt to show this with only "conclusory, vague, or

general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed." *Id*. (internal quotations and citations omitted).

Further, "[a] plaintiff must, as a prerequisite for stating a Section 1986 claim, plausibly allege a conspiracy under Section 1985." *Gilliam v. Greenberg Traurig LLP*, No. 23-CV-06144 (PMH), 2024 WL 4043348, at *7 (S.D.N.Y. Sept. 04, 2024). Here, because Plaintiff fails to state a claim for relief under § 1985(3), his claim under § 1986 must fail as well.

## ARGUMENT

### A. Plaintiff Fails to Plausibly State a Conspiracy

#### 1. Plaintiff Fails to Allege there was a Meeting of the Minds to Form a Conspiracy

"A conspiracy is an agreement between two or more individuals, where one individual acts in furtherance of the objective of the conspiracy, and each member has knowledge of the nature and scope of the agreement." *Dove v. Fordham Univ.*, 56 F.Supp.2d 330, 337 (S.D.N.Y. 1999). For a Plaintiff alleging conspiracy under § 1985(3), they must allege "with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Thomas v. Roach*, 165 F.3d 137, 147 (2d. Cir. 1999). In order to establish a § 1985 conspiracy, plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).

Here, Plaintiff's theory of conspiracy starts with the Heritage Foundation's ("Heritage") Project Esther. (Compl.¶3). Plaintiff alleges that this document "described the plan to identify and target pro-Palestinian, non-citizen students and scholars, who would then be arrested and deported by the federal defendant participants in the conspiracy." *Id*. Plaintiff states that "[u]pon information and belief, sometime between late 2024 and March 2025, Defendants Betar and Canary Mission

agreed with the Heritage Foundation Defendants and/or the Federal Defendants…that they would surveil and identify non-citizen Palestinians or supports of Palestinians at Columbia University." (Compl. ¶246); *see also Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."). These types of conclusory allegations are insufficient to plausibly plead a conspiracy, and at best indicate a roughly five (5) month window where the alleged conspiracy began. This should be rejected by the Court.

The Complaint quotes Betar as acting in "coordination with Project Esther of @Heritage" and Torossian as describing Betar's involvement and contacts in Israel and America. (Compl. ¶¶175-176). These statements describe coordination, but do not sufficiently establish agreement to use protected identity or advocacy as a basis for unconstitutional detention or retaliation.

Plaintiff attempts to build a conspiracy theory based on private actions followed by government actions without showing that the parties had entered into a meeting of the minds, one of the essential elements of a conspiracy. *Webb*, 340 F.3d at 110. Here, while Plaintiff may sufficiently show that both the private and government defendants were ideologically aligned, they do not show that there was an "agreement, express or tacit, to achieve the unlawful end." *Id.* Rather, Plaintiff has "not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all defendants." *Id.* at 111; *see also Khan v. City of New York*, No. 14-CV-4665 (SLT) (VMS), 2016 WL 1128298, at *6, 8-9 (E.D.N.Y. Feb. 01, 2016) (dismissing Plaintiff's complaint for failing to establish that there was a meeting of the minds amongst the Defendants).

Finally, it is unclear which Betar entity Plaintiff is referencing in many instances throughout the complaint. Plaintiff cites to two U.S. based Betar entities BZO and BZM as well as

an Israeli organization, Betar World, and alleges that they operate together (Compl. ¶38 "the three entities are jointly referred to as 'Betar'"). This is confusing to each Defendant and "[w]hile Rule 8 does not prohibit collective allegations against multiple defendants, it does require that the allegations be sufficient to put each defendant on notice of what they allegedly did or did not do." *Howard v. Mun. Credit Union*, No. 05-CV-7488 (LAK), 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008). Here, there cannot be adequate notice because Betar USA and Betar, as defined by the Plaintiff, are unclear and amorphously combined. As such, it is unclear what allegations Defendant Betar (as defined by this motion) is on notice of to defend itself against. This attempt to fuse the three (3) entities together without justification should be rejected by the Court.

Accordingly, since Plaintiff has failed to plead a conspiracy, his claims against Defendant Betar should be dismissed.

**2. Defendant Betar's Freedom of Association is Insufficient to Form a Conspiracy**

"[T]he Constitution protects expression and association without regard to the race, creed, or political or religious affiliation of the members of the group which invokes its shield, or to the truth, popularity, or social utility of the ideas and beliefs which are offered." *N.A.A.C.P. v. Button*, 371 U.S. 415, 444-45 (1963); *see also Weiss v. Willow Tree Civic Ass'n*, 476 F.Supp. 803, 818 (S.D.N.Y. 1979) ("[People] have every right to band together for the advancement of beliefs and ideas, however unpalatable the ideas or whatever the underlying motive."). Despite these highly regarded principles, Plaintiff attempts to assert that the Moving Defendants have formed a conspiracy based in part on shared political viewpoints and similar conduct. Those matters alone are not enough; the alleged coordination and communications must plausibly support an agreement to the unlawful objective.

Here, Plaintiff heavily cites social media posts and other statements from Betar to prove his allegations that Betar had entered a conspiracy to deprive him of his civil rights. Again, that is not enough. The alleged statement must plausibly support an agreement to the unlawful objective. The core of this allegation, as mentioned above, is that Betar referenced the Project Esther mission, a public document. That does not establish an agreement. (Compl.¶3). Plaintiff then attempts to build a theory of conspiracy based off of each parties' subsequent actions by relying almost exclusively on social media posts and statements.

In paragraph 175, for example, Plaintiff quotes Betar in saying that "[w]e have set up our Zionist information center and documenting @nyu students who support *Hamas* in coordination with Project Esther of @Heritage." (Compl. ¶175 (emphasis added). While this statement may describe coordination it does not show any reciprocal communications with Betar, or even an acknowledgement from Heritage in support of Betar. Furthermore, it does not establish agreement to the unlawful objective. At best, Plaintiff's allegations infer parallel conduct, but where an inference is at least "equally plausible," the allegations cannot support a conspiracy claim. *See Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 192 (S.D.N.Y. 2021); *see also Twombly*, 550 U.S. at 567 (finding that a conspiracy is not sufficiently pled where "an obvious alternative explanation" for defendants' conduct exists).

Plaintiff then assumes that because the public defendants took some actions the Private Defendants advocated for, there was an overarching, broader conspiracy amongst all parties. However, Plaintiff also shows in his pleadings that the current Trump Administration advocated views consistent with the deportation long *before* he came into office. "As a presidential candidate pursuing his second term," President Trump called Chuck Schumer "'a proud member of Hamas.'" (Compl. ¶148.) In June 2024, President Trump called President Biden as "a 'very bad Palestinian,

a weak one.'" (Compl. ¶149.) On October 15, 2023, Defendant Rubio, at the time a Senator, remarked "that the U.S. should 'cancel the visa of every foreign national out there *supporting Hamas* and get them out of America.'" (Compl. ¶151) (emphasis added). This was made in reference to post October 7, 2023, pro-Palestinian/Anti-Israeli protests occurring at the time. Stephen Miller, following the October 7, 2023 attacks, posted several statements advocating to ban "jihadist migration" and deporting Hamas supporters. (Compl. ¶¶96–98.). That the Private Defendants may have independently agreed in their shock and alarm at the widespread support for terrorism does not establish a conspiracy and Plaintiff's hodgepodge of cherry-picked social media posts and statements fall short in substantiating a claim.

This is insufficient to plausibly allege a conspiracy. *See City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 375 (1991) ("Since it is both inevitable and desirable that public officials often agree to do what one or another group of private citizens urge upon them…[a]ll [] regulation would be vulnerable to a conspiracy charge." (internal quotations and citations omitted)). Further, the request of a private individual eventually leading to government action does not establish joint action or conspiracy. *See Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014). Here, when the Federal government "exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct . . . ." *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (explaining the necessary involvement of private parties in state action in the context of § 1983). Accordingly, Plaintiff's claims under § 1985(3) must be dismissed.

Finally, an allegation of agreement amongst defendants is a legal conclusion "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. What remains must be "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. "[A] conclusory

allegation of agreement at some unidentified point does not supply facts adequate to show illegality," and "parallel conduct that could just as well be independent action" suggests none. *Id.* at 556–57. An agreement to gather or share information about pro-Hamas sympathizers or Palestinians and their supporters (to the extent this is plead) would not be an agreement to deprive anyone of a right.

**B. Plaintiff Fails to Show that He Was Targeted by Any Betar Entity Due to a Racial or Class-Based Animus**

**1. An Advocacy Group Does Not Establish a Protected Class**

Under 42 U.S.C. § 1985(3) claims, the Plaintiff must show some "racial or other class-based discriminatory animus underlying the [Defendants'] actions." *Brito*, 403 Fed. Appx. at 621. While it is not disputed that Plaintiff is Palestinian, throughout the Complaint, Plaintiff repeatedly argues and alleges that he is a victim of the Defendants' conspiracy to target "non-citizen Palestinians *and their supporters* for arrest, detention, and deportation, as punishment *for their support of Palestinian rights.*" (Compl. ¶1) (emphasis added). To the extent the asserted class is defined solely by shared advocacy criticizing "Israel's subjugation of Palestinians and demanding application of human rights protection to Palestinians", that definition does not itself establish a protected class. (Compl. ¶480). If accepted, "[t]his definitional ploy would convert the statute into the general federal tort law it was the very purpose of the animus requirement to avoid." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).

Further, Plaintiff dedicates an entire subsection of the Complaint to highlight "Other Palestinians and Their Supporters are Similarly Targeted by the Conspiracy." (Compl. pgs. 85 - 104). Within that section, Plaintiff highlights: (1) Ranjani Srinivasan, an Indian national (Compl. ¶299); (2) Yunseo Chung an Asian woman (Compl. ¶308); (3) Leqaa Kordia, a Muslim Palestinian (Compl. ¶320); (4) Momodou Taal, a Muslim (Compl. ¶327); (5) Dr. Badar Khan Suri, an Indian

national (Compl. ¶343); (6) Dr. Rümeysa Öztürk, a Turkish national (Compl. ¶357); (7) Mohsen Mahdawi, a Palestinian (Compl. ¶374); and (8) Efe Ercelik (Compl. ¶398). These allegations describe a broader group united by advocacy. Plaintiff alleges that these individuals were targeted because of their support for Palestine and/or their opposition to Israel, not because they belonged to a definable class. All of the above individuals, as stated below, received attention due to their support for a terrorist organization – regardless of who they are, their religion or nationality. Expressing support or sympathy for a terrorist organization because you are critical of Israel does not put you in a protected class, but it will certainly cause you to receive negative attention from numerous individuals.

The Complaint quotes Betar as describing targeted individuals as "pro-Hamas." For example, in paragraph 12 of the complaint, Plaintiff quotes Betar who said it was targeting "foreign nationals on visas who support Hamas." (Compl. ¶12). In paragraph 155, Plaintiff quotes Betar in saying that it had "started commencing lists of Jew-hating foreign nationals on visas who support Hamas." (Compl. ¶155). Additionally, in Plaintiff's extensive citation to other individuals he consistently proves that Betar focused on individuals who they perceived were pro-Hamas and anti-Israel. For example, Ranjani Srinivasan, referenced above, is an Indian national, that was "supporting Hamas activities violence and terrorism [sic] advocacy, tied to protests." (Compl. ¶¶299, 307) (internal quotations omitted). Momodou Taal, received Betar's attention because he "praised the Hamas attacks on October 7" and posted "glory to the resistance." (Compl. ¶¶331, 342). And, of course, being laudatory of "the resistance" is interpreted by Betar as a euphemism for the murder of Israelis. Finally, by way of just one more example, Plaintiff cited Betar's attention on Dr. Khan Suri because he "spread Hamas propaganda and had ties to a senior Hamas advisor (via his wife)." (Compl. ¶355).

Plaintiff's tenuous conspiracy theory, supported by heavily citing to non-Palestinians cannot support the inference that he was targeted due to his Palestinian identity. This is especially true when, by Plaintiff's own admission, Betar sought to expose individuals because of their support for Hamas, a terrorist organization. (Compl. ¶¶12, 155). More plausibly, the Complaint supports an inference that Betar targeted individuals because of their offensive speech, not because they belonged to any specific group. As discussed above, this is also demonstrated by the OAG finding that Betar focused on Jews whose speech they viewed as offensive in the same way as it did individuals who appeared to be Palestinian or Muslim. (Ex. 1¶¶10, 12, 13). These allegations support an inference that Betar's alleged targeting was prompted by individuals expressed views and activities and not by their membership in a protected class.

Regardless, the alleged class relied upon by the Plaintiff is insufficient to establish the required discriminatory animus under § 1985(3). "Class-based animus 'encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex.'" *Torres v. Carlson*, No. 25-cv-3474 (CM), 2026 WL 1534439, at *15 (S.D.N.Y. June 01, 2026) (quoting *Martin v. New York State Dep't of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000). Further, "class" in the context of § 1985(3) "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray*, 506 U.S. at 269. A group defined solely by shared political advocacy does not establish a protected class. *Torres*, No. 25-cv-3474 (CM), 2026 WL 1534439, at *15-16.

Plaintiff's claims are similar to the arguments rejected by the Second Circuit in *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 968 F.2d 286 (2d Cir. 1992). There, after the Jewish Community Relations Council of New York, Inc. ("JCRC") threatened Stevensville with an economic boycott unless Jews for Jesus's contract with the Stevensville

Country Club was cancelled, Jews for Jesus sued JCRC. *Id*. at 288. There, Jews for Jesus argued they experienced racial discrimination because "gentiles who share the religious belief of plaintiffs are not targeted by defendants." *Id*. at 291. However, the court found that because Jews for Jesus was "a racially diverse society", whose membership included both Jews and non-Jews, "it cannot, by definition, constitute a racial class or, consequently, maintain a claim as 'Jews' of racial discrimination." *Id*. at 292.

Here, instead of alleging a Palestinian class or a conspiracy to target Palestinians specifically, Plaintiff alleges a plan to target Palestinians and their supporters. In support of this, he to actions against Muslims, Turkish nationals, Indian nationals, and South Korean nationals whose common thread is that they expressed vocal support for the post-October 7 movement that sympathized with and endorsed Hamas's actions. This crucial detail is contained in social media images in the Complaint and conspicuously, intentionally ignored. This is insufficient to form a group "with discrete and immutable characteristics" sufficient to sustain a § 1985(3) claim. *Torres v. Carlson*, No. 25-cv-3474 (CM), 2026 WL 1534439, at *15 (S.D.N.Y. June 01, 2026) (quoting *Martin v. New York State Dep't of Corr. Servs.*, 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000); *see also Reid v. City of New York*, No. 20 Civ. 9243 (KPF), 2022 WL 2967359, at *21 (S.D.N.Y. July 27, 2022) ("Plaintiff cannot state a claim under Section 1985(3) merely by alleging that Defendants took an action that negatively affected him or a class of ostensibly similarly situated people." (citation omitted)). Only twice in the 495-paragraph Complaint does he allege he was targeted because of his Palestinian identity. (Compl. ¶¶297, 430). Without more, these two statements are insufficient to assert a conspiracy under § 1985(3), and Plaintiff does not allege more. *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 419 (2d Cir. 1999) ("The mere assertion of racial motivation, however, is not sufficient to state a conspiracy claim [under § 1985].")

Plaintiff's Complaint could be read to argue that Palestinians and their supporters are being discriminated against for their political affiliation. He states that the Defendants "worked together to terrorize, Palestinians, their supporters, and their political movement for self-determination." (Compl. ¶23). This too is insufficient.

It is true that "courts in this Circuit have found protected classes to include political affiliation, gender, religion, and disability." *Berenson v. Biden*, 791 F. Supp. 3d 398, 424 (S.D.N.Y. 2025) (citations omitted). In *Keating v. Carey*, 706 F.2d 377, 386-88 (2d. Cir. 1983), the Second Circuit found political parties to be a protected group under § 1985. However, following this ruling "the Supreme Court in [*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 837 (1983)], held that § 1985 might not extend to discrimination against political groups except where that discrimination was based on racial animus." *Fulani v. McAuliffe*, No. 04 Civ. 6973 (LAP), 2005 WL 2276881, at *6 (S.D.N.Y. Sept. 07, 2005). The *Fulani* court continued its legal history by noting that "after *Scott*, the Fourth Circuit considered *Keating* and declined to follow it." *Id*. (citing *Harrison v. KVAT Food Management, Inc.*, 766 F.2d 155, 161-62 (4th Cir. 1985). Ultimately, the *Fulani* court concluded that "this Circuit does not recognize political affiliations for purposes of class membership under § 1985." *Id*; *see also Berenson*, 791 F. Supp. 3d. at 424 ("[I]t is unclear whether discrimination based on political affiliation or gender still qualifies as class-based discriminatory animus for the purpose of a conspiracy claim under Section 1985(3)."). The Court need not resolve the full reach of political-affiliation protection here: the Moving Defendants challenge a class defined merely by advocacy, rather than membership in a political party.

Even if this Court were to interpret the complaint as a conspiracy to discriminate against individuals who are pro-Palestine, that too is too broad and vague of a class. It is an amorphous

group of people that could feasibly encompass citizens and non-citizens, innumerable ethnic backgrounds, members of multiple political parties, and many other potentially definable characteristics. As such, it could never be found to contain the sufficient immutable characteristics. *See Torres*, No. 25-cv-3474 (CM), 2026 WL 1534439, at *15 (S.D.N.Y. June 01, 2026). To suggest that a class may consist of people that support a movement the Moving Defendants see as tied to political violence must also fail.

**2. Plaintiff Fails to Plausibly Connect Betar to an Agreement Motivated by Protected-Class Animus**

Plaintiff's claims that Betar targeted him due to a racial or class-based animus (to the extent a cognizable one is alleged) are self-defeating by showing that Betar targeted individuals based off their political viewpoint in relation to the complex historical Israel-Palestine conflict, not because they belonged to any particular class. As a result, Plaintiff fails to show that he was targeted by Betar because of his racial or class affiliation, but rather his speech.

In the complaint, Plaintiff cites directly to Betar's webpage where, allegedly, Betar "stated that it was targeting certain individuals because their speech or expressive activities were 'pro-Palestinian.'" (Compl. ¶164). Plaintiff continues, saying "Betar's reasons for targeting certain people included: 'organizing a pro-Palestinian vigil,' 'pro-Palestinian posts on X,' 'organizing a pro-Palestinian teach in,' or 'lead[ing] a pro-Palestinian encampment,' 'pro-Palestinian activism,' and 'pro-Palestinian flyer distribution.'" *Id*. In the next paragraph Plaintiff states that it believed some individuals "'should be deported' because of: 'pro-Palestinian speech,' 'joining a Gaza solidarity march,' 'a pro-Palestinian op-ed,' 'Gaza-related posts,' 'a Gaza petition,' 'Gaza advocacy,' 'involvement in Gaza protests,' a 'Gaza solidarity march,' 'pro-Palestinian tweets,' 'organiz[ing] a pro-Palestinian rally.'" (Compl. ¶165).

However, Plaintiff also heavily cites Betar's alleged involvement in focusing on other pro-Palestinian voices. But the Complaint misleadingly fails due to its omission in referencing, in text, the complete context of the social media posts and statements relied upon. For example, Plaintiff states that Betar made actions against Srinivasan for 'supporting Hamas activities 'violence and terrorism' [sic] advocacy; tied to protests.'" (Compl. ¶299, 307). Plaintiff also alleges that Betar highlighted Chung because of 'her arrest at a Barnard College protest on March 5, 2025, and that 'DHS called her conduct 'concerning.'" (Compl. ¶318). For Leqaa Kordia, Plaintiff alleges that Betar moved against her because "'ICE targeted her for her pro-Hamas involvement from 2024.'" (Compl. ¶323). For Momodou Taal, Plaintiff alleges that Betar moved against him because he had "'praised the Hamas attacks' on October 7" and his "'Pro-Palestinian posts on X, including *glory to the resistance*.'" (Compl. ¶331, 342) (emphasis added). For Dr. Khan Suri, Betar highlighted him because "'he spread Hamas propaganda and had ties to a senior Hamas advisor (via his wife).'" (Compl. ¶355). For Dr. Rümeysa Öztürk, Plaintiff stated that Betar protested her due to her pro-Hamas stance because "'[s]he engaged in activities supporting Hamas Propaganda. Co-authoring an Op-ed where she endorses Hamas.'"

Additionally, Plaintiff actively misleads the Court in its citations to the OAG Discontinuance by omitting findings that clearly demonstrate Betar was not acting because of a racial animus – but because of its disgust with those perceived to applaud Hamas and support the anti-Israel movement that was re-ignited on October 7, 2023. (Compl. ¶¶68-70). For example, Plaintiff omitted the findings in the OAG Discontinuance, paragraph 39, that Betar did not admit to any wrongdoing and that the OAG found that BZO took action against activists, that were not only Muslim, Arab and Palestinian, but also Jewish—individuals "not aligned with their vision of

Judaism or Israel" and that they sought to "fight back against these terrorists". (Ex. 1 ¶¶10, 12, 13, 22, 39).

Taken together, all of these citations Plaintiff show that Betar was not motivated to target individuals because they belonged to any particular race, ethnicity, or other cognizable class. Rather, they overwhelmingly show that any alleged action by Betar was done so because of individuals espousing an extreme political view that is contrary to those of Betar – and many others. This is further demonstrated throughout the complaint from the Plaintiff's own citations. For example, in paragraph 12 of the complaint, Plaintiff quoted Betar who said it was targeting "foreign nationals on visas who support Hamas." (Compl. ¶12). In paragraph 155, Plaintiff quotes Betar in saying that it had "started commencing lists of Jew-hating foreign nationals on visas who support Hamas." (Compl. ¶12). Additionally, in Plaintiff's extensive citation to other individuals targeted by Betar, Plaintiff consistently proves that Betar went after individuals who were pro-Hamas as detailed above.

Further, Plaintiff does little to distinguish or show that he was targeted by Betar because of his Palestinian ethnicity or Muslim faith as opposed to his speech. Plaintiff concedes that he was "pre-selected" when Betar allegedly "agreed" to "identify non-citizen Palestinians or supporters of Palestinians at Columbia University." (Compl. ¶246).

All this shows is that any focus by Betar, specifically BZO, was not because of any individual's membership in a particular class. As stated above, Plaintiff himself cites to Betar statements against anti-Israel Muslims, South Korean, Turkish, and Indian nationals, not because of their nationality or religion, but because of their political position on the Israel-Palestine conflict and their support of Hamas. This is insufficient to satisfy the racial or class-based animus requirement. *See, e.g., Morales v. New York*, 752 F.3d 234, 238 (2d Cir. 2014) (finding failure to

state a § 1985 claim where plaintiff alleged defendants violated their rights "because of their discriminatory intent" and "based on [plaintiff's] race and color); *Posr*, 180 F.3d at 419 (2d Cir. 1999) ("The plaintiff identifies himself as black, and he alleges in his complaint that the actions taken against him were racially motivated. The mere assertion of racial motivation, however, is not sufficient to state a conspiracy claim [under § 1985].").

It is clear that Betar acted not because Plaintiff, or anyone, fell into a particular racial, ethnic, religious, or otherwise identifiable class, but because they found these individuals to be terrorist sympathizers taking a stance directly against the interest of the State of Israel. Further, this clearly shows that Betar would have sought to expose any person who espouse positions against Israel and support terrorism, regardless of identity or creed.

Analogously, in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), the Supreme Court considered whether "opposition to abortion constitutes discrimination against the 'class' of 'women seeking abortion.'" *Id*. at 269. The court held that the position that "petitioners' opposition to abortion reflects an animus against women in general must be rejected." *Id*. The court reasoned that the "record in this case does not indicate that petitioners' demonstrations are motivated by a purpose (malevolent *or* benign) directed specifically at women as a class" and that "'[w]hatever may be the precise meaning of a 'class' for purposes of *Griffin's* speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Id*.

Similarly, here, Plaintiff builds support for his allegations of racial or class-motivated animus by citing instances that demonstrate any Betar entity, specifically BZO, focusing on individuals based upon speech and anti-Israel ideology. It is unclear what "class" Plaintiff seeks

to claim membership. He attempts to walk a line of alleging racial animus against Palestinians while using the targeting of non-ethnically Palestinian individuals who are supportive of the Palestinian cause to show this animus. This, however, is insufficient. Adopting this ideology would allow plaintiffs "to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the general federal tort law it was the very purpose of the animus requirement to avoid." *Id*.

Accordingly, Plaintiff's claims against Betar under 42 U.S.C. § 1985(3) should be dismissed.

**C. Betar's Actions are Protected by the First Amendment**

Under the Noerr-Pennington Doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The Noerr-Pennington doctrine "specifically protects efforts to advocate a particular point of view with respect to a party's business interests, and attempts to advocate for the passage or enforcement of a particular law." *Zeleny v. Brown*, No. 17-cv-07357-RS, 2019 WL 3430734, at *4 (N.D. Cal. July 30, 2019) (citation omitted). Further, "to exercise its petitioning rights meaningfully, a party may not be subjected to liability for conduct intimately related to its petitioning activities." *Sosa*, 437 F.3d at 934. The Ninth Circuit has also found that the Noerr-Pennington doctrine applies to citizen communications with police. *Forro Precision, Inc. v. IBM*, 673 F.2d 1045, 1060 (9th Cir. 1982).

While the Noerr-Pennington Doctrine has not been applied outside of antitrust contexts in the Second Circuit, its roots in the First Amendment render it applicable here. "The Supreme Court has described the right to petition as 'among the most precious of the liberties safeguarded by the Bill of Rights' and 'intimately connected, both in origin and in purpose, with other First

Amendment rights of free speech and free press.'" *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (quoting *United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)).

Here, Plaintiff's allegations against Betar primarily consist of allegations that Betar had drafted lists of individuals it wanted deported, which they provided to government officials, and public social media posts from Betar that individuals were on its "deport list" and/or posts calling for the deportation of individuals. Essentially, Betar was lobbying the government to deport people in furtherance of its stated role "to do everything it can to protect Jewish people" after the staggering rise of anti-semitism and the global celebration of a terrorist group, Hamas. (Compl. ¶¶177). To the extent Plaintiff seeks liability for genuine requests for government action, the Betar Defendants contend that this is protected petitioning.

Further, Plaintiff's insinuations that there were behind-closed-doors conversations between Betar and government officials is irrelevant because that is also protected activity. *See Boone v. Redevelopment Agency of the City of San Jose*, 841 F.2d 886, 894-95 (9th Cir. 1988) (stating that private meetings between government officials and individuals seeking to lobby the government is a form of advocacy protected under Noerr-Pennington); *see also United Mine Workers of America v. Pennington*, 381 U.S. 657, 669 (1965) (stating that petitioning conduct is not made illegal even if it is supported by illegal purposes and motivations).

While there are exceptions to the Noerr-Pennington doctrine, "there is no 'conspiracy' exception to the Noerr-Pennington doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights." *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1057 (9th Cir. 2005) (citing *City of Columbia v. Omni Outdoor Adver. Inc.*, 499 U.S. 365, 382-83 (1991)).

"In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens." *Id*. These holdings absolutely bar Betar from liability under Section 1985(3). Accordingly, Plaintiff's claims against Betar must be dismissed.

### D. Plaintiff Fails to State a Claim Against Defendant Ronn Torossian

#### 1. The Complaint Does Not Plausibly Allege Torossian's Knowing Participation in an Unlawful Agreement

"It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999). The statements attributed personally to Torossian must be assessed on their substance; his corporate role does not establish liability. (Compl. ¶¶¶176-77). Additionally, "[w]hile Rule 8 does not prohibit collective allegations against multiple defendants, it does require that the allegations be sufficient to put each defendant on notice of what they allegedly did or did not do." *Howard v. Mun. Credit Union*, No. 05-CV-7488 (LAK), 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008).

Nowhere in the Complaint does the Plaintiff sufficiently allege how Defendant Torossian is a part of the broader alleged conspiracy through the statements attributed to him in the Complaint or outside of his affiliation with Betar. This is wholly insufficient to "put [Defendant Torossian] on notice of what [he] allegedly did or did not do." *Howard*, No. 05-CV-7488 (LAK), 2008 WL 782760, at *12 (citing *McCray v. City of New York,* No. 03 Civ. 9685(DAB), 2007 U.S. Dist. LEXIS 90875, at *80, 2007 WL 4352748 (S.D.N.Y. Dec. 11, 2007)). Accordingly, Mr. Torossian should be dismissed as an individual defendant.

#### 2. Defendant Torossian did not Personally Join the Alleged Conspiracy

"A conspiracy is an agreement between two or more individuals, where one individual acts in furtherance of the objective of the conspiracy, and each member has knowledge of the nature and scope of the agreement." *Dove v. Fordham Univ.*, 56 F.Supp.2d 330, 337 (S.D.N.Y. 1999). Here, Plaintiff has not plausibly pled that Defendant Torossian joined the alleged conspiracy. Specifically, Plaintiff fails to show Defendant Torossian's individual meeting of the minds.

As stated above, Defendant Torossian is only mentioned five (5) times in the complaint. The closest Plaintiff gets to showing Defendant Torossian joined the conspiracy is when he vaguely and imprecisely stated that Betar is "involved" with Project Esther. (Compl. ¶¶176). Even that, however, is about Betar's alleged role in the conspiracy, not that Defendant Torossian individually joined. While Plaintiff explicitly attempts to detail Betar's alleged role, Defendant Torossian's role is not -- other than as an officer of Betar.

It is well established that "the officers, agents, and employees of a single corporate entity are legally incapable of conspiring together." *Murphy v. City of Stamford*, 634 Fed. Appx. 804, 805 (2d Cir. 2015). However, when defendants pursue "personal interests wholly separate and apart from the entity", they may be found liable for their conduct. *Richard v. Leclaire*, No. 9:15-CV-00006 (BKS/TWD), 2017 WL 4349381, at *4 (N.D.N.Y. Sept. 29, 2017); *see also In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2015 WL 6472656, at *16 (S.D.N.Y. Oct. 23, 2015) ("Even where a principal and agent are incapable of conspiring with one another, they both remain capable of conspiring together with outside third parties."). Here, however, Plaintiff has not pled anything to show Defendant Torossian's role in the conspiracy outside of being an officer of Betar. There are no allegations of his individual actions, communications, or personal interests separate from Betar. This is insufficient.

The Complaint contains no specified allegations of Torossian's personal involvement. *See Sant v. Stephens*, 821 F. Appx. 42, 45 (2d Cir. 2020) (finding plaintiff's § 1985 claim failed because the defendant did not "personally participate" in the injury causing decision); *see also Vail v. City of New York*, No. 18-CV-9169 (JPO), 2020 WL 127639, at *2 (S.D.N.Y. Jan. 10, 2020) (dismissing a § 1983 claim against an individual defendant because "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citations omitted). A "complaint must plead facts sufficient to indicate that the defendant w[as] directly and personally responsible for the alleged deprivation." (internal quotations and citations omitted)); *Delee v. Hannigan*, 729 Fed. Appx. 25, 31 (2d Cir. 2018) (dismissing a § 1983 claim against supervisory defendants).

Plaintiff must show "that the parties have [at least] a tacit understanding to carry out the prohibited conduct." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citing *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 427 (2d Cir.1995) (quoting *United States v. Rubin,* 844 F.2d 979, 984 (2d Cir.1988)). There are no allegations that Defendant Torossian individually communicated with any of the Private Defendants or the Federal Defendants, no allegations of his individual actions in furtherance of the conspiracy, or anything else that could plausibly allege his individual participation in the conspiracy. The allegations in the Complaint wholly fail to sufficiently establish Torossian's assent to an agreement to use protected identity or advocacy as a basis for unconstitutional detention or retaliation. Accordingly, Mr. Torossian should be dismissed as an individual defendant.

### E. Plaintiff's Claims Under 42 U.S.C. § 1986 Fail

#### 1. Plaintiff's Claims Under 42 U.S.C. § 1986 Fail Because There is No Conspiracy Under 42 U.S.C. § 1985(3)

"A plaintiff must, as a prerequisite for stating a Section 1986 claim, plausibly allege a conspiracy under Section 1985." *Gilliam v. Greenberg Traurig LLP*, No. 23-CV-06144 (PMH), 2024 WL 4043348, at *7 (S.D.N.Y. Sept. 04, 2024). Here, because Plaintiff fails to plausibly allege a conspiracy to deprive constitutional rights under 42 U.S.C. § 1985(3), his claim under § 1986 must fail as well.

**2. Plaintiff's Claims Under 42 U.S.C. § 1986 Fail Because They are Time Barred**

"[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. Here, Plaintiff alleges that the conspiracy against him under 42 U.S.C. § 1985(3) culminated with his arrest on March 8, 2025. (Compl. ¶31). *See Rich v. New York*, No. 21 CIV. 3835 (AT), 2022 WL 992885, at *9 (S.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Rich v. Miller*, No. 25-1387-CV, 2026 WL 2683000 (2d Cir. Sept. 14, 2026). Claim accrual occurs when the "[p]laintiff knew, or had reason to know of the harm or injury." *Id.* (dismissing as untimely § 1986 claim brought over one year after plaintiff's arrest).

One year from that date would have been March 8, 2026, however, Plaintiff's complaint was not filed until over four (4) months after that date on July 14, 2026. This is over the one (1) year statute of limitations outlined in 42 U.S.C. § 1986. Therefore, Plaintiff's claims under § 1986 cannot be sustained and must be dismissed. *See also Carvel v. Franchise Store Realty Corp.*, No. 08 Civ. 8938 (JGK), 2009 WL 4333652, at *8 (S.D.N.Y. Dec. 01, 2009) ("[T]he statute of limitations for claims under 42 U.S.C. § 1986 is one year after the cause of action has accrued." (citations omitted)).

### F. The Moving Defendants Incorporate Co-Defendants' Arguments by Reference to the Extent they Relate to Mr. Khalil's Failure to State a Claim, or Any Other Applicable Basis

The Moving Defendants incorporate by reference the arguments for dismissal put forth by the U.S. Department of Justice on behalf of the Federal Defendants, in their official and individual capacity, to the extent they relate to Mr. Khalil's failure to state a claim. If the Court dismisses the claims against the Federal Defendants, it should dismiss the claims against the Moving Defendants. Further, the Moving Defendants incorporate by reference any arguments made by Co-Defendants to the extent they relate to Plaintiff's failure to state a claim or any other applicable basis.

## CONCLUSION

Even after viewing the allegations in the Complaint in the light most favorable to the Plaintiff, Plaintiff fails to state a claim under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 against the Moving Defendants. Accordingly, the Moving Defendants respectfully request this Court dismiss the claims against them with prejudice and grant such other and further relief as the Court finds just and appropriate.

Dated: November 3, 2026
New York, New York

**BUCHANAN INGERSOLL & ROONEY PC**

By: */s/ Stuart Slotnick*
Stuart P. Slotnick, Esq.

640 Fifth Avenue, 9th Floor
New York, New York 10019
(212) 440-4400
stuart.slotnick@bipc.com

*Attorneys for*
*Betar Zionist Organization, Inc., Betar Zionist Movement, Inc. and*
*Ronn Torossian*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law complies with the word count limitations set forth in Local Civil Rule 7.1(c) and contains 8553 words, exclusive of the caption, the table of contents, the table of authorities, the signature blocks, and this certificate.

By: *_/s/ Stuart Slotnick_*
Stuart P. Slotnick, Esq.